THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MAURICE L. GODBOUT, Defendant-Appellant.

First District (2nd Division)   No. 62613

Opinion filed October 12, 1976.

John Panici, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Maurice L. Godbout (hereinafter defendant) was charged with the separate offenses of improper lane usage and of driving a motor vehicle while under the influence of intoxicating liquor.[1] (Ill. Rev. Stat. 1973, ch. 95½, pars. 11—709(a), 11—501(a).) Following a jury trial, he was found guilty of both charges and sentenced solely on the latter finding to one year conditional discharge from confinement and ordered to pay a fine of $350 and $100 in costs.

Defendant's appeal presents the following issues: (1) whether the court properly denied the motion to suppress the chemical tests; (2) whether the court properly denied the motion to suppress the confession without a hearing; (3) whether the court properly ruled on certain evidentiary matters; (4) whether the court erred in refusing to allow defendant an opportunity to qualify his expert witness; (5) whether the court improperly participated in the trial and improperly commented on the evidence; (6) whether the court properly instructed the jury; and (7) whether defendant was proved guilty beyond a reasonable doubt.

The charges against defendant arose from his operation of an automobile on March 17, 1975. Prior to trial, by motions to suppress, defendant challenged the admissibility of breathalyzer test results, of a confession, and of other evidence. His motion to produce the breathalyzer test and to produce the test ampoules which had been used in the test administered to him was denied by the trial court. At the hearing on the motion to suppress evidence, defendant testified that he was arrested by Sergeant Louis Bervid and taken to the village of Hanover Park police station; that he signed a form submitting to the breathalyzer test; and that he smoked cigarettes five or ten minutes before taking the test. The arresting officer testified on the motion that he observed defendant driving in an erratic manner; that he gave defendant *Miranda* warnings; that he administered the test; and that defendant did not smoke immediately prior to the test. The motion to suppress evidence was then denied.

At the trial, Officer Thomas Sidman testified that on March 17, 1975, at about 1:15 in the morning, he saw defendant driving in an erratic manner. After observing the automobile weaving across the center line and being driven onto the shoulder, Sidman signaled to Sergeant Bervid who followed defendant and also observed his driving. Defendant stopped

[1] Defendant was arrested in the village of Hanover Park, Cook County, Illinois.

upon a signal from Bervid. Bervid, Sidman, and another officer, C. Dexter Marks, saw defendant drop all the papers from his wallet when he exited the car in a swaying manner. Defendant then stated, "I know I have had too much to drink; I'm sorry." At the station defendant's breath was tested twice, at 2:50 a.m. and then at 3:05 a.m.; the first reading was .21 percent alcohol in the blood, the second .18 percent. Throughout the period at the station, defendant's attitude was polite and cooperative, his speech fair. Although defendant's eyes were bloodshot and he seemed to be swaying and wobbling, he performed the coin pick-up test. He staggered on the walking test, however, and had difficulty with the finger-to-nose test.

Scott Helem, defendant's roommate, testified that he had seen defendant at their residence about three hours before and also after the arrest. Helem testified further that defendant seemed normal at all times, and that defendant has an excellent reputation for sobriety.

Defendant testified that on March 16, 1975, he had two beers in a tavern at 4 p.m. and two more in a second tavern about 5:30. He then went home where he remained until 11 p.m. At that point defendant returned to the first tavern, had one more beer about 12:30 on March 17, 1975, and then went to a restaurant to eat. When he left the restaurant, it was foggy and visibility was poor. Upon defendant's stop, papers fell from his wallet because his plastic-encased driver's license stuck in the wallet. He testified further that upon his arrest his hands were cuffed behind his back and remained so until he arrived inside the station. He also denied stumbling, and driving under the influence of intoxicating liquor.

Richard W. Hall testified as an expert on behalf of the defendant on the subject of breathalyzer testing. When counsel for defendant attempted to place before the jury Hall's qualifications, the trial court stopped the questioning and announced judicial notice would be taken of Hall's qualifications. Hall testified that a breathalyzer test lacks probative value unless the machine has first been checked with a standardization test; that the sobriety of a person at the time of an earlier occurrence cannot be determined from the test; and that the test's validity is impaired if a subject smokes immediately before the test.

## I.

■■ Defendant maintains that the court erred in denying the motion to suppress the chemical tests because the State in this case failed to produce upon request the ampoules which had been used in the breath analysis.[2] A motion to produce the pertinent ampoules was denied. In fact the record indicates that the said ampoules were destroyed. Suppression by the prosecution of evidence favorable to an accused upon request violates

---

[2] Ampoules are sealed vessels containing a solution of potassium dichromate, which are replaced for each operation of the breathalyzer apparatus.

due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. (*Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194; *People v. Murdock* (1968), 39 Ill. 2d 553, 560, 237 N.E.2d 442, *cert. denied* (1971), 404 U.S. 957; *People v. Hoffman* (1965), 32 Ill. 2d 96, 99-100, 203 N.E.2d 873; *People v. Nichols* (1st Dist. 1975), 27 Ill. App. 3d 372, 384-87, 327 N.E.2d 186; *People v. Dixon* (1st Dist. 1974), 19 Ill. App. 3d 683, 686, 312 N.E.2d 390.) On the other hand, the State is under no duty to produce evidence for the defense where it does not exist. (*People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 496-97, 292 N.E.2d 387; *People v. Taylor* (1965), 32 Ill. 2d 165, 171-72, 204 N.E.2d 734.) The trial court here noted that the ampoules were destroyed in accordance with standard operating procedures of breathalyzer testing. See *People v. Van De Rostyne* (2nd Dist. 1974), 26 Ill. App. 3d 1048, 320 N.E.2d 270, *aff'd and remanded* (1976), 63 Ill. 2d 364, 349 N.E.2d 16.

Defendant, however, seeks a new interpretation of a provision in the Illinois Vehicle Code which states:

"(g) Upon the request of the person who submitted to a chemical test or tests at the request of a law enforcement officer, full information concerning the test or tests must be made available to him or his attorney." (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501(g).)

In contending that this provision mandates the return of ampoules used in his breathalyzer test, defendant relies solely on a California case construing the same provision in the California Vehicle Code. (West's Cal. Ann. Vehicle Code §13354(c).) In *People v. Hitch* (1974), 12 Cal. 3d 641, 527 P.2d 361, 117 Cal. Rptr. 9, the California Supreme Court held on rehearing that the ampoules had been destroyed in good faith and in conformity with standard law enforcement procedures; consequently, the trial court was not in error in suppressing the tests. However, that court held that, in future breathalyzer tests, the test ampoule, its contents, and the reference ampoule customarily used in the test constitute material evidence on the driver's guilt or innocence of the charge of driving a vehicle under the influence of intoxicating liquor. The supreme court's ruling was applied prospectively only, not retroactively. Consequently, in California the ampoules must now be preserved. The dissent in that case and the majority in the earlier case, 11 Cal. 3d 159, 520 P.2d 974, 113 Cal. Rptr. 158, stated that, since the destroyed evidence was necessary to accord Hitch a fair trial, the State should not be permitted to use any evidence of the breathalyzer tests.

If sufficient evidence appeared in a record for our review that preservation of test ampoules provides valuable information to both the prosecution and defense, we would consider that evidence closely.

However, the record here—in contrast to the record in the *Hitch* case—does not permit a proper resolution of this interesting issue. After extensive hearings, the trial court in *Hitch* made detailed findings of fact, concluding that the test ampoule, its contents, the reference ampoule, and the bubbler tube used in the original test, would, if preserved, provide the kind of valuable information to which we have alluded. (*People v. Hitch* (1974), 12 Cal. 3d 641, 645, 649-50, 527 P.2d 361, 117 Cal. Rptr. 9; 11 Cal. 3d 159, 520 P.2d 974, 113 Cal. Rptr. 158, 160.) In the case at bar, however, we have little, if any, scientific evidence from which to determine what the significance would be of preserving the ampoules. (*Cf. State v. Teare* (1975), 133 N.J. Super. 338, 336 A.2d 496; 135 N.J. Super. 19, 342 A.2d 556.) As the next portion of our opinion indicates, we think that defendant may have been prevented from presenting us with such evidence. In any event, in view of our remanding this cause for a new trial, this subject can be more thoroughly developed, should the need arise to again review this matter.

## II.

■■ Defendant also alleges that the trial court erred in participating in the trial of the cause, in seeking to impeach the expert witness in the jury's presence, in making improper remarks, and in commenting on the evidence. Although a trial judge may question witnesses for purposes of clarification, this must be done in a fair and impartial manner, and without showing prejudice or bias against either party, and under no circumstances should he express an opinion as to veracity, for this is the province of the jury. (*People v. Tyner* (1964), 30 Ill. 2d 101, 104, 195 N.E.2d 675.) The trial judge should not express by word or indicate by conduct, in the jury's hearing, any opinion upon the facts, as this is the function of the jury. (*People v. Sprinkle* (1963), 27 Ill. 2d 398, 403, 189 N.E.2d 295.) Thus, the ultimate decisions of fact and of the credibility of witnesses must be left to the jury (*People v. Santucci* (1962), 24 Ill. 2d 93, 98, 180 N.E.2d 491); particularly in a criminal case, the judge should exercise great care to avoid making any comment likely to lead the jury to infer that his opinion is in favor of or against the defendant. (*People v. Coli* (1954), 2 Ill. 2d 186, 189, 117 N.E.2d 777.) In summary then a trial judge must not in the presence of a jury invade the province of the jury by making comments, insinuations, or suggestions indicative of belief or disbelief in the integrity or credibility of a witness. *People v. Marino* (1953), 414 Ill. 445, 450, 111 N.E.2d 534.

Yet a trial court has discretion to question witnesses in order to elicit the truth, although the court may not be an advocate; and the correctness of each examination depends on the circumstances of the case. (*People v.*

*Hopkins* (1963), 29 Ill. 2d 260, 265, 194 N.E.2d 213; *People v. King* (1st Dist. 1964), 50 Ill. App. 2d 421, 428, 200 N.E.2d 411.) The State admits that the expert witness Hall was questioned extensively by the court, but maintains the questioning was proper. We disagree.

■■ In the instant case the trial court generally participated in, and at times conducted, the defendant's expert's direct examination; the record is replete with the court's constant questions, interruptions, and commentary. A few examples will suffice:

> "THE COURT: Yes, but then would that also effect [*sic*] his driving? Would it take less liquor to effect [*sic*] his driving?
>
> THE WITNESS: Not necessarily.
>
> THE COURT: In other words, if I have a hundred and two fever, I am not necessarily under the influence of alcohol. It doesn't have a side feffect [*sic*] of making me more under the influence because I blow a high balloon?
>
> THE WITNESS: No, Your Honor.
>
> THE COURT: That makes good sense. * * *
>
> * * *
>
> THE COURT: Well, I believe that the state of this record, sir, or for the purpose of the hypothetical, the test—the machine was tested three days prior to the taking of this test.
>
> THE WITNESS: This isn't necessarily the case. This is only a calibration.
>
> THE COURT: That assists our thinking to a certain extent.
>
> THE WITNESS: Wouldn't assist mine.
>
> * * *
>
> Q. Would you give the Court and jury the benefit of—
>
> THE COURT: No, he has given his answer. Now, assuming that the machine is proper, instead of five beers, would you say that it is possible to get decimal one eight and decimal two one on five beers?
>
> THE WITNESS: No.
>
> THE COURT: Of course not, so the issue is: Is the machine working or is the testimony about the ingestion of alcohol the truth. That is—those are two of the three—what is the third possibility in this? You gave us three.
>
> THE WITNESS: That there —
>
> THE COURT: Impurity in the machine."

The record does not suggest any reason or need for the trial court to have taken such an active part in the examination of defendant's expert witness. We believe that the trial court exceeded its function and participated excessively and unnecessarily in the trial. Although failure to

object to a question put by the court ordinarily waives the issue on appeal (*People v. DeSavieu* (1st Dist. 1973), 14 Ill. App. 3d 912, 920, 303 N.E.2d 782; *People v. King* (1st Dist. 1964), 50 Ill. App. 2d 421, 428, 200 N.E.2d 411), we find no waiver where, as here, the trial court exhibited such an immediate, consistent, and unnecessary interference in the examination of a witness.

### III.

■■ Defendant also contends that he was deprived of the presumption of innocence due to improper jury instructions. Although the jury was instructed on the presumption of innocence, over defendant's objection it was also instructed on the presumption of driving under the influence of intoxicating liquor. The latter instruction was couched in the exact statutory language of section 11—501(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501(c)), which states that an analysis of 0.10 percent alcohol in a person's blood raises the presumption that he was under the influence. The jury was informed in the same instruction that nothing in the section should be construed as limiting the introduction of other competent evidence bearing upon the issue. Where testimony of breathalyzer readings is properly admitted into evidence, an instruction on the statutory presumption of intoxication is proper. *People v. Krueger* (1st Dist. 1968), 99 Ill. App. 2d 431, 441-42, 241 N.E.2d 707.

■■ In order to prove the offense of driving while under the influence of intoxicating liquor, the State has the burden of proving that the defendant drove a motor vehicle at the time and place in question and was, at that time, under the influence of intoxicating liquor. (*People v. Toler* (5th Dist. 1975), 32 Ill. App. 3d 793, 798-99, 336 N.E.2d 270; *People v. Williams* (1st Dist. 1972), 3 Ill. App. 3d 1036, 1039, 279 N.E.2d 735; *People v. Brower* (1st Dist. 1971), 131 Ill. App. 2d 548, 549, 268 N.E.2d 196.) In carrying its burden of proof, of course, the State may invoke the results of a properly conducted breathalyzer test to raise the statutory presumption of intoxication. (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501(c).) However, the presumption is rebuttable. The trial court properly instructed the jury on these requirements.

In the case at bar, however, the trial court provided further instructions:

"The Court instructs the jury that the breathalyzer test is admissible in evidence and is to be considered along with all of the other evidence in determining the guilt or innocence of the defendant.

The Court instructs the jury that the effect of the Statutory presumption is to eliminate the necessity of proof by the prosecution of the effects of alcohol on the individual when the level is within the range established by the presumption."

These instructions were given over defendant's objection; the record does not indicate the source of these instructions, nor have we been advised by the State as to their source. The statutory presumption is not conclusive but rebuttable; the presumption does not prevent the introduction of evidence to show nonintoxication at the time of driving. (See Gard, Illinois Evidence Manual §53, at 72 (1963); D. Furrh, *Illinois' New Implied Consent Law,* 61 Ill. B.J. 242, 269, n. 25 (1973); Annot., 16 A.L.R.3d 748 (1967).) Also given over defendant's objections were the following instructions:

> "The Court instructs the jury that the breathalyzer test measures the amount of alcohol in a person's blood. The degree to which a person is under the influence of intoxicating liquor closely parallels the concentration of blood alcohol. * * *
>
> * * *
>
> The Court instructs the jury that on the date in question, there was in full force and effect a law in the state of Illinois which reads in part, Chapter 95½, Section 11—501 D, Illinois Vehicle Code, The State Department of Public Health is authorized to approve satisfactory techniques or methods to ascertain the qualifications and competency of individuals, to conduct such analysis, and to issue permits which shall be subject to termination or revocation at the discretion of the State Department of Public Health."

Although the source of these instructions was not identified either, the former is apparently derived from *People v. Bobczyk* (1st Dist. 1951), 343 Ill. App. 504, 508-10, 99 N.E.2d 567. We think that the numerous instructions dealing with the breathalyzer tests unnecessarily emphasized that evidence; and instructions calling particular attention to certain portions of the evidence are improper. (*People v. Gaither* (1st Dist. 1968), 103 Ill. App. 2d 47, 56, 243 N.E.2d 388; *People v. Sledge* (1st Dist. 1966), 71 Ill. App. 2d 285, 292, 218 N.E.2d 845.) Further, jury instructions may not be misleading or confusing and should fully and fairly inform the jury of the applicable law. (*People v. Foster* (4th Dist. 1974), 23 Ill. App. 3d 559, 560, 319 N.E.2d 522; *People v. Price* (5th Dist. 1972), 7 Ill. App. 3d 110, 114, 286 N.E.2d 530; *People v. Fort* (1st Dist. 1971), 133 Ill. App. 2d 473, 486, 273 N.E.2d 439.) As the instant case reveals, over-instructing a jury may create confusion, rather than eliminate it.

■■ Consequently, we believe that the excessive number and types of instructions may have mistakenly suggested to the jury that defendant was guilty of driving under the influence solely on the basis of breathalyzer results. While we recognize that a reviewing court will not always reverse merely because one instruction is superfluous or misleading (*People v. Robinson* (1st Dist. 1974), 21 Ill. App. 3d 343, 350,

315 N.E.2d 95), we cannot say that, in considering the instructions as a whole, defendant was not prejudiced.[3]

## IV.

■■ Even though the balance of issues raised by defendant need not be examined, we note the following as guidance for the court on retrial. Defendant contends that the trial court erred in denying his motion to suppress the confession (Ill. Rev. Stat. 1973, ch. 38, par. 114—11) without a hearing. Only minutes before, defendant's combined motion to suppress evidence (namely, the station house tests other than the chemical tests) and the chemical tests had been denied after a full hearing. The record reflects that defendant sought to recall the same witnesses on a second hearing on the motion to suppress the confession. Having just concluded a full and complete hearing, the trial court stated he was not going to hear the same testimony again. However, the trial court gave defendant an opportunity to call additional witnesses for his second motion, which the defendant did not do. As the trial court stated at the time, it could properly keep in mind previous testimony. We agree. The trial court having just listened to certain witnesses' testimony should not be required to sit and listen to a replay of the same testimony. And the record clearly shows that the trial court afforded defendant a fair and adequate opportunity to present any additional testimony. Clearly, a trial court has the power to exclude cumulative or repetitious testimony. *People v. Raby* (1968), 40 Ill. 2d 392, 403, 240 N.E.2d 595, *cert. denied* (1969), 393 U.S. 1083; *People v. Rosenborgh* (1st Dist. 1974), 21 Ill. App. 3d 676, 687, 315 N.E.2d 545, *cert. denied* (1975), 421 U.S. 919.

■■■ The defendant complains that the trial court prevented him a proper opportunity to qualify his expert witness before the jury. We agree. Here the trial court cut short defendant's attempt to bring forth Hall's skill, education, and experience and instead took judicial notice of his expertise. Since the weight to be attached to an expert opinion is a question for the jury, in light of the expert's credentials (*Buckler v. Sinclair Refining Co.* (5th Dist. 1966), 68 Ill. App. 2d 283, 293, 216 N.E.2d 14), the outcome of a trial may and often does turn on an expert's qualifications and his talent to present his conclusions clearly and persuasively so that the jury will respect them. (2 Jones on Evidence §14:10, at 610 (6th ed. 1972).) All matters bearing upon an expert witness's qualifications may be brought out when presenting such a witness. (Hunter, Trial Handbook for Illinois Lawyers §59.3, at 553 (4th ed. 1972).) Further, the weight and value of the testimony of expert witnesses largely

---

[3] In cases involving the charge of driving a motor vehicle under the influence of intoxicating liquors, the instructions in IPI—Criminal do not completely cover the issues. We note that the instructions suggested in Illinois Criminal Practice §7.67 (Ill. Inst. for Cont. Legal Ed., 1974), set forth a helpful guide for instructions in such a case.

depend upon the foundations of fact and of reason upon which their opinions stand. (*Chicago & Northwestern Ry. Co. v. Town of Cicero* (1895), 154 Ill. 656, 662, 39 N.E. 574; *Peet v. Dolese & Shepard Co.* (2nd Dist. 1963), 41 Ill. App. 2d 358, 369, 190 N.E.2d 613; *Cram v. City of Chicago* (1st Dist. 1900), 94 Ill. App. 199, 201.) Thus, a party offering an expert witness should be allowed to make plain the strength of the witness's grounds of knowledge and the reasons for trusting his belief. II Wigmore on Evidence §655, at 759 (3rd ed. 1940).

For the reasons stated herein, the judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial.

Judgment reversed and remanded.

HAYES and JIGANTI, JJ., concur.