**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Christopher Russell KILGUS,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas CASO, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jeffrey Lee BECK, Defendant-Appellant.**

**Nos. 77–1513, 77–1568 and 76–3699.**

United States Court of Appeals,
Ninth Circuit.

March 20, 1978.

---

William L. Osterhoudt (argued) of Singer & Osterhoudt, Michael H. Metzger (argued), San Francisco, Cal., for defendant-appellant.

J. Stephen Czuleger, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING and ANDERSON, Circuit Judges, and NIELSEN,* District Judge.

## PER CURIAM:

Appellants were convicted by the district court below of illegal importation of marijuana (Count II) and possessing marijuana with the intent to distribute (Count IV) [21 U.S.C. §§ 952, 960, 963, 841(a)(1), and 18 U.S.C. § 2]. We reverse appellants' convictions because the only substantial evidence which connects them with the crime (a "unique identification" of their aircraft by a Customs Officer using a Forward Looking Infrared system (FLIR)) was inadmissible.[1]

## THE FLIR SYSTEM

Briefly, the FLIR is a relatively new system developed by the military for the detection and tracking of targets through the use of infrared light rays. The system scans an area much the same as radar and utilizes an array of infrared detectors (the type, number, and effectiveness of each being a military secret). Infrared rays are picked up by these detectors, electronically processed, and shown as a visual image on a 6″ × 8½″ screen very similar to a black and white TV screen. The image on the screen appears in black, white and grey contrasts. That is, objects which are hotter than their background appear white and objects colder than their background appear black (or vice versa, since the "mode" of the system can be reversed to give the image a reversed effect analogous to a photograph negative).

There is no question that the FLIR can be used for *generic* identification of objects, i. e., that it can readily be used to distinguish between a plane and a boat, or even between a Lear jet and a DC–3. At issue here, however, is whether the FLIR is sufficiently reliable and accepted in the scientific community to be used for *unique* identification. In other words, whether the FLIR can be used to identify one specific DC–3 from other DC–3's.

## BACKGROUND

At approximately 1:45 a. m., on March 25, 1976, a Customs Patrol Officer at a radar control center in Phoenix, Arizona, observed an unidentified aircraft on his radar scope traveling in a direction toward the United States–Mexican border. Contrary to customary practice, the aircraft emitted no identification beacon signals. A Customs plane was contacted and began pursuit of the aircraft. The unidentified aircraft was observed on the FLIR system contained in the Customs plane and appeared to be a DC–3 type aircraft. This aircraft was followed until it landed on a dry lake bed in an area known as Lost Lake in San Bernardino County, California. The Customs plane continued circling at an altitude of 5,500 feet and kept the aircraft on the ground under surveillance with the FLIR. Three land vehicles met the aircraft and stayed next to it for nearly two hours. When these vehicles departed, the Customs plane followed them until they were intercepted (marijuana was found in these vehicles). The Customs plane then returned to the dry

---

* The Honorable Leland C. Nielsen, United States District Judge, Southern District of California, sitting by designation.

1. See Latin, Tannehill & White, *Remote Sensing and Environmental Law*, 64 California Law Review 1300 (1976). Although dealing with the use of remote sensing in the field of environmental law, the article does explore in some depth the evidentiary problems associated with the use of remote sensing devices and the role of operator-observer.

lake bed and discovered that the other aircraft had departed. This occurred about 4:30 a. m. About 6:00 a. m., a DC–3 landed at Las Vegas International Airport. This plane was piloted by appellant Kilgus and appellants Caso and Beck were passengers.

The only evidence at trial to connect the Kilgus, Caso and Beck DC–3 with the DC–3 that landed on the lake bed was the testimony of Customs Officer James Gibbs who viewed images of both aircraft on the screen of the FLIR in the Customs plane. In his opinion, both aircraft were the same. He arrived at this opinion because of certain similar "spots" which he saw on the FLIR screen around the elevator and wingtips of both aircraft.

Several serious problems exist as to Officer Gibbs' testimony regarding the "unique identification" of these aircraft through the use of the FLIR. First, Officer Gibbs admitted that he did not understand the theory behind the FLIR equipment, that he never made any particular study of FLIRs and that he has had no training in the unique identification of aircraft from a remote distance. Second, the performance of the FLIR is affected by barometric pressures, temperature, humidity and other atmospheric conditions. There is no testimony to show that these factors were the same on the lake bed in the middle of the night as they were after sun up in Las Vegas. Third, defense counsel were in essence foreclosed from impeaching either Officer Gibbs' testimony or his reliance on the FLIR system because most of the necessary technical information was shrouded in military secrecy. Finally, and most importantly, the unrebutted testimony of the defense's expert was that the FLIR is *not* a generally accepted technique among the scientific community for the unique identification of remote objects.

 A necessary predicate to the admission of scientific evidence is that the principle upon which it is based "must be sufficiently established to have gained general acceptance in the particular field to which it belongs." *United States v. Brown*, 557 F.2d 541, 556 (6th Cir. 1977), quoting *Frye v. United States*, 54 App.D.C. 46, 293 F. 1013, 1014 (1923); *see also United States v. Amaral*, 488 F.2d 1148, 1152–53 (9th Cir. 1973).

For the above reasons, we hold that the testimony of Officer Gibbs which identified appellants' aircraft as the same aircraft which landed on the lake bed was inadmissible.[2]

The convictions as to all three appellants are REVERSED.

2. This opinion should not be interpreted in such a fashion as to necessarily preclude the use of FLIR in all situations. Assuming a proper foundation as to reliability of generic identification and of the expertise of the operator, FLIR identification may have significant probative value even though only generic when considered together with other admissible evidence concerning an identification. For example only, where there is continuous FLIR surveillance (no other visual contact) from a nighttime aerial intercept to a nighttime ground intercept and there is a disputed issue as to the crossing of a state boundary or international border.