[Nos. 45309, 45338, 45339.     En Banc.     November 2, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. FAY
CANADAY, ET AL, *Petitioners.*

*Hemmen, Cohoe, Klavano & Bottiger*, by *Robert P. Klavano*, for petitioners Purdue, et al.

*Darrell E. Lee* and *Steven W. Thayer*, for petitioners Canaday, et al.

*Christopher T. Bayley, Prosecuting Attorney*, and *Frederick L. Yeatts, Assistant Chief Criminal Deputy for King County*, for the State as petitioner in No. 45339.

*Gregory O. DeBay* and *Roger B. Ley*, for respondents Breeden, et al.

*Jerry F. King, City Attorney*, and *George A. Riemer, Assistant*, for respondent City of Vancouver.

*Don Herron, Prosecuting Attorney, Joseph D. Mladinov, Senior Deputy, James E. Carty, Prosecuting Attorney*, and *Dennis M. Hunter, Deputy*, for the State as respondent in No. 45338.

*Miles F. McAtee* on behalf of Washington State Trial Lawyers Association, amicus curiae.

HOROWITZ, J.—Defendants in two of these three consolidated cases appeal from superior court order denying their motions to suppress Breathalyzer test results or dismiss the prosecutions on charges of driving while intoxicated. In the third case the State seeks review of a district court order dismissing similar prosecutions.

The three cases all raise the question whether the routine destruction and disposal of Breathalyzer test ampoules violates the due process rights of persons taking the test who

are later prosecuted for driving while intoxicated. Defendants here voluntarily took the Breathalyzer test to determine blood alcohol content after being arrested on suspicion of driving while intoxicated. They now seek suppression of the Breathalyzer test results or dismissal of the prosecutions on the grounds the State unconstitutionally destroyed the ampoules, which are said to be material evidence helpful to their defense. The Superior Courts for Clark and Pierce Counties denied the motions to suppress or dismiss. We affirm these orders. The Federal Way District Court, King County, dismissed the prosecutions. We reverse that judgment and hold that the routine destruction and disposal of used Breathalyzer test ampoules does not violate due process.

The relevant facts are common to all defendants. Following their arrests they voluntarily submitted to a test of their blood alcohol content by means of the Breathalyzer machine. This procedure is authorized by Washington's implied consent law, RCW 46.20.308. The Breathalyzer test yields a reading of the blood alcohol content which is admissible as evidence in any civil or criminal trial where a defendant is alleged to have been driving while under the influence of alcohol. *See* RCW 46.61.506. Under that statute the test result may create a rebuttable presumption the defendant was intoxicated. The scientific principles underlying the Breathalyzer test and the required procedure for its administration have been described by this court in the past. *See Schoultz v. Department of Motor Vehicles,* 89 Wn.2d 664, 574 P.2d 1167 (1978); *State v. Baker,* 56 Wn.2d 846, 355 P.2d 806 (1960). The test is based on a predictable reaction between alcohol in the subject's breath and a chemical solution contained in a small glass ampoule. A sample of the subject's breath is forced into the ampoule and the resulting chemical reaction is measured by comparing the reacted chemical solution to a nonreacted sample by means of a photoelectric device. The results are calibrated in terms of a percentage of alcohol in the blood. After the officer administering the test has recorded this

reading the test ampoule is routinely destroyed. It is the destruction and disposal of the test ampoule to which the defendants here object.

The defendants sought discovery of the ampoules used in their tests and, upon the State's failure to produce them, moved for suppression or dismissal. They claim the used ampoule would yield material evidence at their trials, and the State must therefore preserve and store them. Failure to do so, it is argued, violates due process under the rule stated by this court in *State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976). We note there is no evidence that any of the defendants took advantage of the statutory right under RCW 46.61.506(5) to obtain a contemporaneous and independent test of blood alcohol content administered by a qualified person of the subject's own choosing, although that right is explicitly revealed in the statement read to every subject who is asked to take the Breathalyzer test.

Defendant's many contentions regarding the materiality and usefulness of the used Breathalyzer test ampoules, and the alleged constitutional requirement to preserve them, can be summarized in two statements. First, the used ampoules can be subjected to scientific testing which yields results purportedly capable of impeaching the validity of the original Breathalyzer test results. Second, the used ampoules can be examined for several qualities by ordinary means, yielding conclusions purportedly capable of impeaching the credibility of the testing officer with regard to the propriety of the original testing procedure. These contentions will be considered separately.

I. Use of used ampoules to impeach original test results.

The courts below each heard expert testimony regarding the feasibility of performing scientific tests of the contents of a used ampoule, with the goal of supporting or refuting the validity of the original test results. Retesting procedures are enthusiastically supported by some scientists. They believe the ampoule contents can be analyzed for volume and composition in such a way as to yield reliable

results which can be compared significantly to the original test results. These procedures, defendants maintain, would allow them to introduce expert testimony at their trials to rebut the evidence of the original test. The materiality of this expert testimony is the basis of their claim the used ampoules must be preserved.

The threshold question, however, considered by the superior courts below, is whether such expert testimony would be admissible at trial. Although retesting is claimed to be reliable by some scientists, others are not persuaded. The courts heard testimony from recognized experts in the fields of analytical chemistry and toxicology, with long experience with the development and use of the Breathalyzer machine. These experts testified that retesting procedures are not scientifically reliable due to unpredictable changes in the stored chemicals and inadequacy of volume–testing techniques, and the principles used to draw conclusions based on these procedures are not generally accepted in the scientific community. Both superior courts applied the prevailing test for admissibility of scientific experimental evidence, which is discussed below, and held that expert testimony regarding the results of retesting used ampoules would be inadmissible. They concluded the State had no duty to preserve the ampoules for this purpose. The district court below did not consider the threshold question of admissibility.

■ The test applied by the courts below, commonly known as the *Frye* standard, is whether the scientific principle from which deductions are made is sufficiently established to have gained general acceptance in the scientific community. The standard was originally set out in *Frye v. United States,* 293 F. 1013, 1014 (D.C. Cir. 1923). It has since been adopted by at least four other federal courts of appeal and reaffirmed by the District of Columbia Circuit.[1]

---

[1]*United States v. Kilgus,* 571 F.2d 508, 510 (9th Cir. 1978); *United States v. Brown,* 557 F.2d 541 (6th Cir. 1977); *United States v. Alexander,* 526 F.2d 161, 163 (8th Cir. 1975); *United States v. Addison,* 498 F.2d 741 (D.C. Cir. 1974); *Marks v. United States,* 260 F.2d 377, 382 (10th Cir. 1958), *cert. denied,* 358 U.S. 929, 3 L. Ed. 2d 302, 79 S. Ct. 315 (1959).

This court implicitly adopted this standard in *State v. Woo,* 84 Wn.2d 472, 527 P.2d 271 (1974). Moreover, courts of at least nine other states have adopted it.[2] It is therefore the prevailing rule and no court to our knowledge has rejected it with regard to the admissibility of testimony based on scientific experimental procedures at a criminal trial.

The rationale of the *Frye* standard is that expert testimony may be permitted to reach a trier of fact only when the reliability of the underlying scientific principles has been accepted by the scientific community. *See United States v. Franks,* 511 F.2d 25 (6th Cir. 1975). *See also* J. Richardson, *Modern Scientific Evidence* §§ 6.2, 6.3 (2d ed. 1974). In other words, scientists in the field must make the initial determination whether an experimental principle is reliable and accurate. This court adheres to the rule that the reliability of scientific evidence must be shown as a prerequisite to its admission. *State v. Baker, supra.* We therefore hold that the superior courts below properly applied the *Frye* standard of general acceptance in the scientific community to determine the admissibility of expert testimony regarding retesting of Breathalyzer test ampoules. The district court erred in failing to consider this question and assuming the testimony is admissible.

Although certain of the defendants involved in the superior court proceedings argue before this court that the *Frye* standard should not be applied, they do not suggest any alternative standard for admissibility. Furthermore, they conceded at their hearing below that the *Frye* standard generally governs admissibility of scientific evidence. We

---

[2]*People v. Kelly,* 17 Cal. 3d 24, 549 P.2d 1240, 130 Cal. Rptr. 144 (1976); *State v. Conner,* 241 N.W.2d 447 (Iowa 1976); *Commonwealth v. Lykus,* 367 Mass. 191, 327 N.E.2d 671 (1975); *People v. Tobey,* 401 Mich. 141, 257 N.W.2d 537 (1977); *State v. Bryan,* 133 N.J. Super. 369, 336 A.2d 511 (1974); *People v. Leone,* 25 N.Y.2d 511, 255 N.E.2d 696, 307 N.Y.S.2d 430 (1969); *State v. Olderman,* 44 Ohio App. 2d 130, 336 N.E.2d 442 (1975); *Commonwealth v. Topa,* 471 Pa. 223, 369 A.2d 1277 (1977).

therefore reject the contention the *Frye* standard does not apply.

We also hold the superior courts' findings that the ampoule retesting procedures are not generally accepted are supported by substantial evidence in the record. We decline to adopt defendants' suggestion we review the record de novo in this regard and dispense with our rule that findings supported by substantial evidence will not be set aside on appeal. *Parkridge v. Seattle,* 89 Wn.2d 454, 464, 573 P.2d 359 (1978). The trial judges below were in a position uniquely suited to making this determination. Even were we to undertake a de novo review, though, we would find the weight of expert opinion denying acceptance of such procedures in the scientific community very persuasive.

We conclude that expert testimony based on scientific retesting of used Breathalyzer ampoules is inadmissible as evidence at defendants' trials. The used ampoules are therefore not material evidence which can be used as a basis for impeaching the original test results, and the State has no duty to preserve them for such a purpose. We note the three states which have held due process requires retention of used ampoules for this purpose have done so without considering the question whether proffered expert testimony based on retesting of the ampoules is properly admissible. *See Lauderdale v. State,* 548 P.2d 376 (Ala. 1976); *People v. Hitch,* 12 Cal. 3d 641, 527 P.2d 361, 117 Cal. Rptr. 9 (1974); *State v. Michener,* 25 Ore. App. 523, 550 P.2d 449 (1976). Indeed, the only previous case we have found which does consider the admissibility question found there was no generally accepted procedure for retesting, and held destruction of the ampoules did not violate due process. *State v. Bryan,* 133 N.J. Super. 369, 336 A.2d 511 (1974).

II. Use of used ampoules to impeach the testing officer's credibility.

The defendants also contend the used ampoules have evidentiary value independent of the retesting procedures

in that they can be examined for evidence that the original test was improperly administered. Specifically they claim food particles in the ampoule would show the testing officer did not inspect the defendants' mouths for food before administering the test, as required by this court's decision in *State v. Baker, supra.* Furthermore, the size of the ampoule could be checked once again to corroborate or refute the testing officer's testimony that the ampoule conformed to certain size specifications. The used ampoules are thus claimed to be material evidence useful to the defense in impeaching the credibility of the officer who administered the original Breathalyzer test. The test result, as noted above, may be introduced only to create a presumption, which is rebuttable, that a defendant was intoxicated at the time he was arrested. *See* RCW 46.61.506.

In *State v. Wright* this court held the State is required to preserve all potentially material and favorable evidence as protection afforded to an accused by due process. Used Breathalyzer test ampoules, defendants claim, meet the test of potential materiality and favorableness, and must therefore be preserved under the rationale of that case. We cannot agree that used ampoules are material in a sense that rises to constitutional significance, and therefore hold that due process does not require that they be preserved.

The United States Supreme Court set out a test for the materiality of nondisclosed evidence in *United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976). The court held constitutional error is committed by nondisclosure only if the evidence creates a reasonable doubt which did not otherwise exist. *United States v. Agurs, supra* at 112. This definition of constitutionally material evidence is a refinement of the court's earlier holding that suppression of material evidence which is favorable to the accused violates due process. *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). We do not believe that the proposed use of the ampoules in this case— to impeach the credibility of the officer who administered the original test—is a means of raising a reasonable doubt

which did not otherwise exist within the meaning of the rule set out above. The testing officer must attest to the proper completion of each of the numerous steps in administering the test. He or she must attest to having checked the subject's mouth for food and having checked the ampoule for proper size specifications, in addition to numerous other procedures required by WAC 448–12–020 and judicial rule. *See, e.g., State v. Baker, supra.* The officer may testify and be cross–examined regarding the care taken at each step in the procedure. In sum, the defendant has adequate opportunity at trial to impeach the credibility of the officer without access to the used ampoule. Furthermore, the chain of logic between the credibility of the officer with regard to the proper performance of the test (the results of which can, at most, create a rebuttable presumption), and the innocence or guilt of the defendant is a long one. The crucial issue, the defendant's guilt or innocence of the charge of driving while intoxicated, is subject to proof of a much more direct nature. We conclude that the used Breathalyzer test ampoules are not material evidence in a constitutional sense and nondisclosure of the ampoules caused by routine destruction and disposal is not constitutional error.

■ This result was reached by a federal district court in *Edwards v. Oklahoma*, 429 F. Supp. 668 (W.D. Okla. 1976). The court there rejected the due process argument of the leading case requiring retention of used ampoules, *People v. Hitch, supra.* The federal court argued the constitutional rule requiring retention of evidence is focused on actual harm caused to a defendant by nondisclosure of material evidence. Materiality within the scope of constitutional protection is determined not by speculation about whether the evidence may possibly yield favorable evidence at trial, but rather by the reality of the prejudice to the defendant caused by nondisclosure. *Edwards v. Oklahoma, supra* at 671.

Our holding here is a refinement of the rule stated in *State v. Wright, supra.* In *Wright* the evidence which was

destroyed was the totality of the direct evidence in the case. All else was circumstantial. The destroyed evidence thus related directly to the defendant's ability to determine the facts and make a defense which could prove his innocence or create a reasonable doubt as to his guilt. The substantial prejudice to the defendant caused by the destruction of the evidence in that case is obvious. Under the standard set out in the *Agurs* case, the evidence was material in a constitutional sense. By contrast, destruction of used Breathalyzer test ampoules, as noted above, does not interfere with the defendant's ability to determine the facts or raise a defense of nonintoxication. Testimony to be gained from the ampoules is only tangential to the question of innocence or guilt. The ampoules are therefore not material in a constitutional sense.

We note that the courts of nine other states[3] have reached the conclusion that disposal of used ampoules does not violate due process.

Persons arrested and asked to take a Breathalyzer test are uniformly offered the opportunity to obtain their own best evidence for use at any trial resulting from the conduct leading to their arrest. They have the right to obtain an independent test of their blood alcohol content administered by a qualified person of their own choosing. RCW 46.61.506(5). They are informed of this right when asked to take the test. Although we do not believe failure to obtain an independent test could amount to a waiver of any recognized constitutional right to due process, the statutory requirement demonstrates an important protection of the subject's right to fundamental fairness which is built into our implied consent procedure. Moreover, the exercise of

---

[3]*State v. Cantu,* 116 Ariz. 356, 569 P.2d 298 (1977); *People v. Hedrick,* 557 P.2d 378 (Colo. 1976); *People v. Godbout,* 42 Ill. App. 3d 1001, 356 N.E.2d 865 (1976); *People v. Stark,* 73 Mich. App. 332, 251 N.W.2d 574 (1976); *State v. Hanson,* 493 S.W.2d 8 (Mo. Ct. App. 1973); *State v. Shutt,* 116 N.H. 495, 363 A.2d 406 (1976); *State v. Bryan,* 133 N.J. Super. 369, 336 A.2d 511 (1974); *State v. Watson,* 48 Ohio App. 2d 110, 355 N.E.2d 883 (1975); *Edwards v. State,* 544 P.2d 60 (Okla. Crim. App. 1975).

this right would yield test results contemporaneous with those obtained by the State, which could have considerable force in rebutting the State's evidence. Washington's procedure cannot be said to be fundamentally unfair.

In view of the disposition we make of this matter we do not reach the question of an appropriate remedy for unconstitutional destruction of material evidence.

The superior court orders denying defendants' motions to suppress or dismiss are affirmed; the district court order dismissing certain prosecutions is reversed. The cases are remanded for further proceedings.

WRIGHT, C.J., ROSELLINI, HAMILTON, STAFFORD, UTTER, DOLLIVER, and HICKS, JJ., and RYAN, J. Pro Tem., concur.

Reconsideration denied December 28, 1978.