**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Jeffrey Rand HELMER, Defendant and Appellant.**

**No. 12578.**

Supreme Court of South Dakota.

Argued April 19, 1979.

Decided May 17, 1979.

John P. Guhin, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

William H. Coacher, Sturgis, for defendant and appellant.

MORGAN, Justice.

Appellant was arrested on July 30, 1977, and took a breathalyzer test with results showing 0.19% alcohol in his blood. He was subsequently arraigned on a charge of driving while there was 0.10% or more by weight of alcohol in his blood, and convicted after jury trial in the Circuit Court for the Eighth Judicial Circuit, Butte County, South Dakota.

On appeal, appellant asserts pretrial error in the failure of the trial court to suppress the breathalyzer evidence and dismiss the information for two reasons: (1) That the test ampoule from the breathalyzer was not preserved for his use as exculpatory evidence; and (2) that the foundation was insufficient to admit any breathalyzer test results because the reliability of said machine has not been sufficiently established to have general acceptance in the field of blood alcohol analysis. He also asserts trial error in the admission of his test results without foundation. We affirm the judgment of the trial court.

At the pretrial suppression hearing, the evidence disclosed that the breathalyzer test was taken at the Butte County Sheriff's Office approximately forty minutes after his arrest. The test was given under the instructions of a certified breathalyzer operator who followed a procedural checklist to insure the correct administration of the test. Testimony was further elicited that it is routine procedure to dispose of the ampoules immediately following the test. There was testimony as to the practicality, possibility and feasibility of retaining the ampoules for further testing, as well as the nature of any possible further testing. Fi-

nally, there was extensive testimony concerning the operator and the operation of the breathalyzer machine and the reliability of its results. The trial court issued its findings of fact and conclusions of law and denied appellant's motions.

In the course of trial, the State offered the blood test results in evidence, which offer was received over appellant's objection which went mainly to the foundation. The State then put the state chemist on as a witness and began to introduce testimony extrapolating the test results to arrive at the alcohol content of appellant's blood at the time of arrest. Appellant objected to this line of questioning on the ground that such extrapolation was outside the expertise of a chemist and fell rather within the expertise of a toxicologist. The objection was sustained. The trial resulted in a verdict of guilty and appellant subsequently pleaded guilty to the second part of the two-part information alleging previous convictions of driving while intoxicated. He was later sentenced to one year in the state penitentiary.

■ The first consideration is whether the trial court erred in determining that the State's failure to preserve and produce the ampoule was not a violation of appellant's constitutional due process rights.

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court ruled that it is a violation of an accused's due process rights for the prosecution to suppress favorable evidence which is material either to the accused's guilt or punishment. It must be first shown, however, that the evidence is both material and exculpatory. This rule has been accepted by this Court in *State v. Parker,* S.D., 263 N.W.2d 679 (1978) and more recently in a more definitive opinion in *State v. Hanson,* S.D., 278 N.W.2d 198 (1979).

We reaffirm our view in *Hansen,* supra, and look first to the materiality of the evidence sought. In *Hansen,* supra, the evidence sought was a sample of the marijuana that defendant was charged with distributing. Obviously, if the evidence was not marijuana, that fact would be highly mate-

rial and exculpatory. But what of the ampoule in the instant case? Several courts have determined that the ampoules, if preserved, would not be material as to the accused's guilt or innocence. It is usually stated that any evidence gained upon remeasuring or retesting the ampoule would go only to the credibility of the machine's operator and the test results. In *Edwards v. State,* Okl.Cr., 544 P.2d 60 (1976), the Oklahoma Criminal Court of Appeals stated:

The ampoules, we note, may indeed provide an accused with an opportunity to impeach the test results as recorded by the breathalyzer, that is, to challenge, on strictly technical grounds, the represented degree of accuracy of any specific breathalyzer device, but such an effort if successful, could only reflect on the credibility or weight to be given the test result and could not, by itself, have conclusively established the innocence of the accused. . . . A re-examination of the ampoules, if technically feasible, would fall short of producing evidence which could be characterized as material as to the issue of guilt or innocence. 544 P.2d at 64.

In *State v. Canaday,* 90 Wash.2d 808, 585 P.2d 1185 (1978), the Washington Supreme Court stated:

The United States Supreme Court set out a test for materiality of nondisclosed evidence in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The court held constitutional error is committed by nondisclosure only if the evidence creates a reasonable doubt which did not otherwise exist. *United States v. Agurs,* supra at 112, 96 S.Ct. 2392. This definition of constitutionally material evidence is a refinement of the court's earlier holding that suppression of material evidence which is favorable to the accused violates due process. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We do not believe that the proposed use of the ampoules in this case—to impeach the credibility of the officer who administered the original test—is a means of raising a reasonable doubt which did not otherwise exist with-

in the meaning of the rule set out above. . . . We conclude that the used breathalyzer test ampoules are not material evidence in a constitutional sense and nondisclosure of the ampoules caused by routine destruction and disposal is not constitutional error. . . .

[D]estruction of used breathalyzer test ampoules, . . . does not interfere with the defendant's ability to determine the facts or raise a defense of nonintoxication. Testimony to be gained from the ampoules is only tangential to the question of innocence or guilt. 585 P.2d at 1189–1190.

In most of the cases in which preservation of the ampoules is not required, the courts state either that retesting the solution in the ampoules for either volume or concentration is not proven to be scientifically feasible or reliable, thereby making the admissibility of any resulting evidence questionable, or else that there was insufficient evidence in the record to support any statements as to reliability of retesting.[1] The three courts that have required preservation of the ampoules, on the other hand, all emphasized that they found retesting to be feasible, reliable and useful. *People v. Hitch*, 12 Cal.3d 641, 117 Cal.Rptr. 9, 527 P.2d 361 (1974); *Lauderdale v. State*, Alaska, 548 P.2d 376 (1976); *State v. Michener*, 25 Or.App. 523, 550 P.2d 449 (1976). In *Hitch*, however, the California Supreme Court ruled that a California *statute* required the preservation of the ampoule, and the ampoule used was a type which could be resealed, unlike those in use nearly everywhere else. The other two courts did not base their decisions on these two grounds, but rather simply agreed with the California Court's conclusions as to retesting.

In the instant case, the trial court found that the only possible use of the used ampoules would be to recheck the volume of their contents. The court apparently rejected any other type of retesting.

Looking next to the exculpatory nature of the material sought, obviously appellant was not able to prove that the ampoule was exculpatory evidence and therefore this requirement is not fulfilled. In *Hitch, Lauderdale*, and *Michener*, however, the court seemed to say that there was a reasonable probability that it would be exculpatory and that denying the accused the ability to find out if it was exculpatory or not was a denial of due process. The Federal District Court in *Edwards v. State of Oklahoma*, 429 F.Supp. 668 (W.D.Okl.1976), however, stated that:

The *Hitch* court found that it sufficed that there was a 'reasonable possibility' that they might constitute favorable evidence. This extension of the *Brady* Doctrine is not justified as a matter of constitutional law. *Brady* focused upon the harm to the defendant resulting from non-disclosure. *Hitch* diverts this concern from the reality of prejudice to speculation about contingent benefits to the defendant. 429 F.Supp. at 671.

In the instant case, we hold that there is no "reasonable possibility" that the evidence would be exculpatory. The trial court found as a fact that in the course of testing, the operator had gauged the ampoule and found it to be acceptable for use. Also, the state chemist testified at the suppression hearing that he had tested twelve random ampoules from the lot which contained the ampoule used in this case and all twelve ampoules contained the proper amount of liquid in proper concentrations.[2]

Further, even if we assume that the ampoule would provide evidence favorable to appellant, does that necessarily suffice to make the evidence exculpatory? Black's Law Dictionary defines "exculpatory" as "clearing or tending to clear from alleged

---

1. *State v. Canaday*, 90 Wash.2d 808, 585 P.2d 1185 (1978); *State v. Cantu*, 116 Ariz. 356, 569 P.2d 298 (1977); *State v. Teare*, 135 N.J.Super. 19, 342 A.2d 556 (1975); *State v. Watson*, 48 Ohio App.2d 110, 355 N.E.2d 883 (1975); *People v. Stark*, 73 Mich.App. 332, 251 N.W.2d 574 (1977); and *People v. Godbout*, 42 Ill.App.3d 1001, 1 Ill.Dec. 583, 356 N.E.2d 865 (1976).

2. We note that this random test was performed in preparation for this case, not as a matter of practice. It would appear to us that random testing of each lot, as is done in several other states that rely on breathalyzers, would be an advisable precaution to shore up the integrity of the test procedure.

fault or guilt; excusing" and this definition has been used in many cases. This definition, however, has been elaborated on in a few cases, including *People v. Bottom,* 76 Misc.2d 525, 351 N.Y.S.2d 328 (1974) and *Commonwealth v. Pisa,* 372 Mass. 590, 363 N.E.2d 245 (1977). In *People v. Bottom,* supra, the court found that evidence which is "exculpatory," that is, evidence which extrinsically tends to establish defendant's innocence as differentiated from favorable evidence which is merely collateral or impeaching, should be made available to defendant in advance of trial, and in *Commonwealth v. Pisa,* supra, that court stated that "exculpatory evidence" is evidence which tends to negate the guilt or support the innocence of the accused. We agree with the distinction drawn in these cases and hold that evidence which would go to the credibility of the test results is not "exculpatory" evidence.

We hold, therefore, that both the materiality and the exculpatory nature of the ampoule is lacking, and the failure to preserve the ampoule is not a denial of due process rights. Further, we agree with those courts that have held that the accused's ability to have an independent blood test taken to challenge the breathalyzer result is sufficient protection of an accused's due process rights. *State v. Shutt,* 116 N.H. 495, 363 A.2d 406 (1976); *State v. Cantu,* 116 Ariz. 356, 569 P.2d 298 (1977).

▮ We next consider the admissibility of breathalyzer test results in general. At the suppression hearing, appellant contended that the reliability of the 900–A Breathalyzer machine has not been sufficiently established to have gained general acceptance in the field of blood alcohol analysis.

The test for admissibility of this type of evidence is found in *Frye v. United States,* 54 App.D.C. 46, 293 F. 1013 (1923):

> [T]he evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must

be sufficiently established to have gained general acceptance in the particular field in which it belongs. 54 App.D.C. at 47, 293 F. at 1014.

See also *State v. Damm,* 62 S.D. 123, 252 N.W. 7 (1933), on rehearing, 64 S.D. 309, 266 N.W. 667 (1936).

The trial court in the instant case made a specific finding that:

> [T]here are valid scientific principles upon which the 900–A Breathalizer (sic) is based; and that the 900–A Breathalizer (sic) accurately and reliably reflects the percentage of alcohol in the blood by weight when the proper procedure is followed and the machine is properly calibrated.

This seems to be the consensus of opinion of courts across the country. In *State v. Baker,* 56 Wash.2d 846, 355 P.2d 806 (1960), an often-cited Washington case, that state's Supreme Court held that before the results of a breathalyzer test for determining alcohol in the blood are admissible in evidence, the state must produce prima facie evidence that:

(1) The machine was properly checked and in proper working order at the time of conducting the test;

(2) That the chemicals employed were of the correct kind and compounded in proper proportion;

(3) That subject had nothing in his mouth at the time of the test and had taken no food or drink within fifteen minutes prior to taking the test; and

(4) That the test was given by a qualified operator in the proper manner.

Other states' requirements, although very similar to those in *State v. Baker,* supra, vary slightly because of rules, regulations, and procedures those states have established with respect to the breathalyzer machine and its use. South Dakota, however, has no such specified rules, regulations, or procedures established in law and so the governing criteria would seem to be that the trial court be satisfied as to the above-stated requirements.[3] The prosecution, of course, has the burden of proving that the

---

3. It may be advisable that the legislature establish specific procedures, guidelines and specifi-

cations which would be beneficial to both defendant and prosecutors by promoting uniform-

proper procedure and safeguards were used. *State v. Guthrie,* 85 S.D. 228, 180 N.W.2d 143 (1970).

The trial court made extensive findings that support its conclusion of law which stated:

That the 900–A Breathalizer (sic) in this case was properly calibrated and the proper procedure was followed in this case[.]

We agree with the trial court's conclusion and hold that such test results are admissible where a proper foundation is laid as detailed above.

█ Appellant's final contention is that, because the test results only indicate the amount of alcohol in his blood at the time of the test and not at the time of his arrest forty minutes earlier, the trial court erred in admitting the test results in this case. Appellant's attempt to preserve this point for appeal is his objection on page 95 of the trial transcript, which reads:

MR. COACHER: At this time I am going to object to the introduction of State's Exhibit 1 upon the grounds and for the reasons there's no foundation as to the fact that there was not any regurgitation, belching for an observed 20 minute period where this did not occur, and for that reason there is a lack of foundation.

ity and consistency in the standards to which the evidence is held.

The results were admissible for the purpose of being used to extrapolate the blood alcohol level back to the time of arrest and, in this case, there appears to be sufficient *foundation* for the admission of these results. Therefore, appellant's objection as to foundation was properly overruled. The problem in this case is that the extrapolation was never done because the court sustained appellant's objection to the expertise of the state chemist and the State failed to produce any other evidence on that point. Therefore, the results were never used for the limited purpose for which they can be admitted. Appellant, however, did not object to the *relevance* of the results as evidence, nor did he move to strike the evidence when it was not properly used. Appellant did cite insufficiency of the evidence as a ground in his motion for directed verdict, but failed to assign the denial of that motion as error, and we are therefore precluded from considering it.[4]

For all the reasons stated, we affirm the judgment of the trial court.

All the Justices concur.

4. *In Re Rosengren's Estate,* 66 S.D. 138, 279 N.W. 540 (1938).