THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY NUGIN, a/k/a Gregory Brown, a/k/a Larry Nugin (Impleaded), Defendant-Appellant.

First District (5th Division)    No. 80-0178

Opinion filed August 21, 1981.

Ralph Ruebner and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Warren A. Zimmerman, and Gino P. Naughton, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant was convicted of aggravated battery by a jury but acquitted of aggravated kidnapping, kidnapping, and armed violence. He was sentenced to three years' imprisonment, to be served consecutively to another 3-year sentence on an unrelated charge and, on appeal, he contends that the trial court erroneously instructed the jury; that he was prejudiced by the prosecution's cross-examination and closing argument; and that a consecutive sentence was improperly imposed.

Janice Freeman (the victim) testified that, at the request of Lamont Johnson, she stored a submachine gun in her apartment; that three days later she met Johnson, along with Gregory Knox, Matthew Crosby, defendant, and her brother-in-law (Gerald Freeman) in her building; that Freeman asked her for the gun and, when she pointed to the closet, he struck her in the face; that Freeman then entered her apartment and she was pushed into an adjacent apartment by Johnson, who held a gun to her head; that Knox struck her in the face and then hit her with an iron lawn chair; that they continued to ask for the submachine gun and, when she said that she did not know where it was, Knox and Johnson said they would kill her; that Johnson, Crosby, and Knox then dragged her down the stairwell and out of the building where Johnson, Knox and Crosby put her in the trunk of a vehicle which had been opened by defendant; that Freeman said she would be killed if she did not tell them the whereabouts of the gun; that she subsequently was removed from the vehicle and led into an abandoned apartment on May Street, where she was tied to a chair and beaten by Johnson and Knox; that Knox instructed defendant to fill a

syringe with battery acid and, after defendant returned with the syringe, Knox placed the needle in her neck; and that at that point someone said he heard the police, and they all left except defendant and Crosby, who remained and untied her. On cross-examination, she testified that she never heard anyone threaten defendant and that he did not strike her, point a gun at her, or put her in the trunk of the car.

Rochelle Geiger, the victim's 13-year-old daughter, testified that she was alone when Freeman, Knox, Johnson, Crosby, and defendant came to her mother's apartment looking for a gun; that when her mother arrived, Freeman struck her twice; that subsequently her mother was put inside the trunk of a car; that defendant was in the car; and that later she was with Freeman and Knox when defendant told them that her mother "got loose." On cross-examination, the witness testified that she never saw defendant hit her mother.

Officer Shaw testified that after a conversation with a woman who had approached his squad car, he went to an address on May Street where he found the victim (who appeared to have been beaten) and defendant in a building basement; that Crosby was outside this building at that time; and that the victim indicated that neither defendant nor Crosby had anything to do with her injuries. Officers Shaw and Griffen, who arrived later, testified that defendant told them he had no knowledge of how the victim sustained her injuries and that he was simply there to pick her up and take her home.

Officer Rochowicz testified that defendant gave a statement that he knew the victim and the others at her apartment; that the victim was "slapped around" by the others, but not by him; that in response to a request by the others, he drove them and the victim to a May Street address; that the victim sat in the front seat during this ride; that upon their arrival, the group entered a basement apartment; that he produced a syringe and needle which he filled with water, although he told the victim the syringe contained battery acid; and that he had nothing else to do with the incident.

Defendant, who is about 5'2" tall and weighs 110 pounds, testified that after parking his car, he and a friend entered the back staircase of an apartment building; that on the second floor, he observed that the victim and Freeman, who was 6' tall and weighed 190 pounds, were having a fight in the presence of approximately eight other persons—including Johnson, who is 6'1" tall and weighs 210-220 pounds; that he and his friend returned to his car; that he had just opened the door when he saw Johnson and Crosby dragging the victim down the stairs; that Knox, in the company of Freeman, Johnson, Crosby, and the victim, pointed a gun at him and instructed him to open the trunk; that he did so because he was afraid of the men; that after he opened the trunk the others placed the

victim inside and closed it; that Knox again pointed a gun at him and said that he wanted to be dropped off; that Knox, Johnson, and Crosby entered the car and instructed him to drive to 63d and May; that upon arrival, he opened the trunk and the men instructed him to go into the basement of a building with them; that as they walked into the building, one of the men was standing in front of him with the victim, another man was in back of him, and the third was in between them; that the men then tied up the victim and Knox gave him a needle and instructed him to fill it with battery acid from his car; that instead, he filled it with water and gave it to Knox, who placed the needle in the victim's fingernail; that when police arrived outside the building, the others fled, but he remained and untied the victim; that Officer Shaw then entered and defendant told him that he knew nothing about the incident; and that the reason he did not tell the police about the victim being locked in the car was that he knew he would be going to jail with Knox, Crosby, and Johnson, who had told him not to tell the police anything.

OPINION

Defendant's principal contention on appeal is that he was prejudiced by certain language in the two issues instructions given to the jury on the aggravated battery charge. The first is Illinois Pattern Jury Instructions, Criminal, No. 11.10 (1968) (hereinafter cited as IPI Criminal), with the "used a deadly weapon" insert,[1] as follows:

"To sustain the charge of aggravated battery, the State must prove the following propositions:

*First*: That the defendant or one for whose conduct the defendant is responsible knowingly or intentionally caused bodily harm; and

*Second*: That the defendant or one for whose conduct the defendant is responsible used a deadly weapon; and

*Third*: That the defendant or one for whose conduct the defendant is responsible did not act under compulsion.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

The second is IPI Criminal No. 11.08, with the name of the victim inserted, as follows:

---

[1] Modified to include responsibility for the act of another and compulsion language.

"To sustain the charge of aggravated battery, the State must prove the following propositions:

*First*: That the defendant or one for whose conduct the defendant is responsible knowingly or intentionally caused great bodily harm to Janice Freeman; and

*Second*: That the defendant or one for whose conduct the defendant is responsible did not act under compulsion.

If you find from your consideration of all the evidence that these propositions have been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that either proposition has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

The defense to all the charges against defendant was compulsion, and the jury was also given issues instructions on the charges of kidnapping, aggravated kidnapping, and armed violence. All of the issues instructions were similar in form, with the pertinent difference being in the proof required by the State as to compulsion. The jury was told in the kidnapping, aggravated kidnapping, and armed violence issues instructions that the State was required to prove "that the defendant did not act under compulsion"; whereas, the aggravated battery instructions set forth above stated the requirement of proof to be "that the defendant *or one for whose conduct the defendant is responsible* did not act under compulsion." (Emphasis added.)

It is the position of defendant that the aggravated battery instructions were erroneous because the above emphasized language told the jury that it should find the defendant guilty if the State proved that either defendant or any of his alleged accomplices did not act under compulsion. It is clear that jury instructions should be neither misleading nor confusing. (*People v. Dordies* (1978), 60 Ill. App. 3d 621, 377 N.E.2d 245; *People v. Godbout* (1976), 42 Ill. App. 3d 1001, 356 N.E.2d 865.) As stated in *People v. Schyman* (1940), 374 Ill. 292, 297, 29 N.E.2d 270, 273:

"A defendant is entitled to have the jury so instructed that it may not become confused as to what constitutes the issue before it, and were it to appear that such confusion might reasonably arise, the giving of such an instruction would constitute error."

We initially note that the emphasized language in the aggravated battery instructions is phrased in the disjunctive rather than in the conjunctive, as indicated by the use of the word "or." It is thus our view that by these instructions the jury was told that the State need only prove one of two alternatives; namely, that defendant did not act under compulsion or that one for whose conduct defendant was responsible did

not act under compulsion. Those alternatives, however, are misleading and could serve only to confuse the jury, because a person acting under compulsion cannot be held responsible for the criminal acts of another since criminal responsibility contemplates an "intent to promote or facilitate" the commission of a crime. (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c).) Having such intent, a person could not be acting under compulsion, as that defense is available only when conduct is performed under the threat of the immediate infliction of death or great bodily harm which the person reasonably believes will be inflicted if the conduct is not performed. Ill. Rev. Stat. 1979, ch. 38, par. 7—11(a); see *People v. Gray* (1980), 87 Ill. App. 3d 142, 408 N.E.2d 1150.

■■ Thus, it appears to us that the phrasing of the State's burden in the alternative was confusing in that it deceptively implied that even if defendant were acting under compulsion, he could nonetheless be held responsible for the criminal acts of another. Furthermore, the confusion is compounded by the fact that there was no evidence that defendant's alleged accomplices were acting under compulsion. (See *People v. Lewis* (1969), 112 Ill. App. 2d 1, 250 N.E.2d 812.) Additionally, we note that all of the charges arose out of the same circumstances; that the defense to all was compulsion; and that the evidence concerning defendant's responsibility for the acts of his alleged accomplices applied with equal force to all charges. Nevertheless, the jury acquitted defendant of all the charges except aggravated battery, and we think that this result could have been and probably was caused by the difference in the required proof as to compulsion. To acquit, the jury necessarily accepted the defense of compulsion as to those charges, and it is reasonable to conclude that the jury did not do so as to aggravated battery because, even if it found defendant's conduct was compelled, it was told that it should convict him if it also found that one for whose conduct he was responsible was not compelled.

Finally, we do not view the general instruction given on the compulsion defense, IPI Criminal No. 24.21, as curative of the confusion. This instruction merely defines the defense, but does not tell the jury how to apply it in the determination of the guilt or innocence of defendant. (See *People v. Pernell* (1979), 72 Ill. App. 3d 664, 391 N.E.2d 85.) Accordingly, we conclude that the aggravated battery instructions were improper in the form given.

The State argues, however, that defendant waived objection to the instructions in question by not challenging them at trial or in his post-trial motion. Although failure to object to instructions at the trial level ordinarily operates as a waiver of any such objection on appeal (*People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513), Supreme Court Rule 451(c) (Ill. Rev. Stat. 1979, ch. 110A, par. 451(c)) provides that "substan-

tial defects" are not waived by failure to make timely objections to instructions "if the interests of justice require." As stated in *People v. Roberts* (1979), 75 Ill. 2d 1, 14, 387 N.E.2d 331, 337:

"[W]here there is a failure to object to an instruction, waiver is the rule, and the provision of our Rule 451(c) constitutes an exception which, under the prior decisions of this court, is a limited exception (*People v. Underwood* (1978), 72 Ill. 2d 124, 129-30), to be used to correct 'grave errors' (*People v. Jenkins* (1977), 69 Ill. 2d 61, 66), or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed (*People v. Joyner* (1972), 50 Ill. 2d 302, 307)." Accord, *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 415 N.E.2d 1027.

■■ In *Jenkins*, defendant was charged with attempt murder, and a mandatory instruction of the State, to which defendant did not object, omitted an essential element—the defense of justifiable use of force. Defendant's mandatory instruction included that element, and the appellate court affirmed defendant's conviction. The supreme court, however, held that the giving of the two contradictory instructions was error and, in reversing, stated that where there are "such grave errors in instructions so as to affect that very important consideration, justice, Rule 451(c) provides for a relaxation of [the waiver doctrine]." (*People v. Jenkins* (1977), 69 Ill. 2d 61, 66, 370 N.E.2d 532, 534.) Similarly, in the instant case, the jury was erroneously instructed as to an essential element of the case—defendant's defense of compulsion—and we believe this was error of such gravity that under the *Jenkins* rationale the waiver rule should be relaxed.

Alternatively, we are also of the belief that the reasoning of *Joyner* is applicable here. In that case, defendant was convicted of murder, but although there was evidence which could have reduced the crime to manslaughter, an instruction defining that crime was not given.[2] The court, in reversing the conviction, stated:

"This was a close case factually and it was possible for the jury to find the defendants guilty of murder, not guilty by reason of self-defense, or guilty of manslaughter. The last option should have remained open to the jury and the jury should have been instructed in this regard. * * *

Under the circumstances of this case, the defendants' failure to tender the appropriate IPI instruction was not as important with reference to the fundamental fairness of their trial as the requirement that the jury be fully and properly instructed. The failure to instruct on this important aspect of the case necessitates a remand

---

[2] A tendered instruction was refused as inappropriate, and no proper instruction was then submitted.

for a new trial." (*People v. Joyner* (1972), 50 Ill. 2d 302, 307, 278 N.E.2d 756, 759.) We view the instant case to be close factually. This is indicated by the jury's acquittal of defendant on the other charges which arose out of the same circumstances and upon which the jury was properly instructed as to compulsion. Had the jury been similarly instructed on the aggravated battery charge, it could have found defendant guilty by reason of criminal responsibility for the acts of others or not guilty because his conduct was compelled. However, under the instructions given, there could not be a verdict of not guilty unless the jury found each of the others was compelled, and we are led to the conclusion (as the court was in *Joyner*) that defendant's failure to tender an appropriate instruction or to object to the issues instructions given, was not as important with reference to the fundamental fairness of his trial as the requirement that the jury be properly instructed.

Since resolution of the jury instruction issue is dispositive of this appeal, it will not be necessary to address the other matters raised on appeal. Accordingly, the judgment of conviction on the charge of aggravated battery is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

LORENZ and MEJDA, JJ., concur.