THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LATEEF HOBBS, Defendant-Appellant.

Fifth District   No. 5—92—0163

Opinion filed August 27, 1993.

Ted E. Barylske, of Alton, for appellant.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Diane L. Campbell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Defendant, Lateef Hobbs, appeals from his conviction and sentence on the offense of second-degree murder based on the shooting death of Alfred "Tanky" Talbert. Following a jury trial held September 25 through October 2, 1990, defendant was sentenced by the cir-

cuit court of Madison County to serve 12 years in the Department of Corrections. He argues on appeal that the jury was confused by certain erroneous instructions, rendering its verdict unreliable; that the trial court erred in refusing his tendered instruction on involuntary manslaughter; that he was denied a fair trial by the prosecutor's comments during closing argument; and that his sentence is excessive and based on improper factors.

Defendant was charged by information filed January 23, 1990, with two counts of the first-degree murder of Alfred C. Talbert, two counts of armed violence predicated on the first-degree murder of Alfred C. Talbert, and one count of home invasion against Sheila L. Talbert and Alfred C. Talbert. Defendant's defense at trial was that he acted in self-defense or under extreme provocation by the victim. At defendant's trial, the jury was instructed on the offenses of first-degree murder, second-degree murder based on unreasonable self-defense and extreme provocation, armed violence predicated on first-degree murder, and home invasion. Defendant's tendered instruction on involuntary manslaughter was refused by the trial court.

The jury returned verdicts of guilty of second-degree murder and guilty of armed violence predicated on first-degree murder. Defendant was found not guilty of home invasion. The conviction for armed violence predicated on first-degree murder was subsequently vacated by the trial court. Defendant's post-trial motions and his motion to reconsider his sentence were otherwise denied.

The evidence adduced at trial reveals the following. Shortly after midnight on January 21, 1990, defendant was present with friends at a tavern when the victim came in and announced a party at the home of his cousin, Sheila Talbert. Several of the tavern patrons, including defendant and his friend, Shalom Colen, went to the party. At one point during the party Sheila Talbert asked the guests for money so that she could purchase more liquor. After returning with the liquor, Sheila became involved in an argument with one of the guests who had not contributed money for the liquor but was attempting to consume some of it. This argument escalated into a physical fight between the guest, Sheila, and Sheila's sister, Suzanne. At this point, Sheila announced that the party was over and asked her cousin, Robert "Sonny" Holmes, to remove the guests.

Holmes became involved in a fight with several of the guests. While several guests were fighting in the hallway, the victim drew his handgun, which was concealed inside a Crown Royal liquor bag, and fired a round into and through the hallway wall. The bullet passed through the wall and into the den of the apartment where several

guests were present. Autopsy results showed that the victim's blood-alcohol concentration was .173.

Two of the guests were slightly injured when the victim fired his gun close to their faces. Defendant became aware that the victim had fired the gun inside the apartment and injured one of the guests. Defendant, who was carrying a gun, gave the gun to the injured guest, who threatened the victim with it but then withdrew and left the party. Defendant made arrangements with Shalom Colen to leave the party, and defendant did leave the apartment. Colen went to the kitchen to retrieve his beer. Outside the apartment several of the guests were beating the victim's cousin, Robert "Sonny" Holmes. Defendant was standing in the vicinity of the beating waiting for his friend, Shalom Colen. At this point, the victim came to the entrance to the apartment and fired his gun several times. The evidence is contradictory as to whether the victim fired the gun straight up in the air or in the direction of defendant. Defendant testified that the victim was firing at him. Defendant grabbed his gun from the individual to whom he had given it and ran back into the apartment.

Upon entering the apartment, defendant observed the victim standing in the living room holding the phone. The evidence is contradictory as to whether the victim was still armed at this time. Defendant testified that the victim was holding the telephone receiver in one hand and the gun in his other hand. The victim's cousin testified that the victim was not armed and was holding the telephone receiver in one hand and the base of the telephone in the other. A .38-caliber revolver was found on the floor of the living room by the police after the shooting, as was a Crown Royal liquor bag. A .38-caliber bullet was found on the floor of the den.

Defendant asked the victim why he had shot at him, and the victim responded with an expletive. According to defendant, the victim began to raise his gun toward defendant. The two were standing approximately four feet apart. Defendant then shot the victim one time in the left shoulder. The victim is left handed. According to the victim's cousin, defendant threatened the victim with the gun, then shot him, and ran out of the apartment. According to the cousin, the victim was attempting to telephone the police when he was shot. Although the bullet entered the victim's left shoulder, it traveled through the victim's body, hitting several vital organs and killing the victim instantly. The time between the victim shooting his gun at the street and the defendant shooting the victim was approximately one minute.

Defendant's expert medical witness testified that the bullet wound to the victim would not have been fatal if the bullet had not hit a bone and ricocheted through the victim's torso. The pathologist who performed the autopsy on the victim testified that both lungs and the liver had been penetrated by the bullet. It was the pathologist's opinion that the bullet did not ricochet off of bone but entered the victim's body at a downward angle. Ballistic evidence indicated that the muzzle of defendant's gun was less than six inches from the victim's shoulder but was not in contact with the shoulder at the time of discharge. The victim was shot with a .45-caliber bullet.

Defendant testified that he reentered the apartment only to disarm the victim and to make sure his friend, Shalom Colen, was unharmed. Defendant was afraid the victim might shoot him as defendant tried to leave the apartment and felt it necessary to disarm the victim. Defendant was mad when he entered the apartment but only shot the victim when the victim began to raise his gun toward defendant.

After the shooting, defendant did not summon help but left with his friends. The evidence indicates that defendant attempted to elude the police and attempted to dispose of his handgun.

At trial the jury received certain instructions which the defendant contends were improper and served to confuse the jury to such an extent that its verdict of guilty of second-degree murder cannot be viewed as reliable. Defendant contends that he was prejudiced by the giving of these improper and confusing instructions such that he was deprived of a fair trial and asks us to reverse the judgment and remand this cause for a new trial.

The defendant contends that the jury was erroneously instructed on the offense of armed violence predicated on first-degree murder because such an offense does not and cannot exist in the State of Illinois. Defendant also argues that the jury was erroneously instructed on the availability of the defense of justifiable use of force (self-defense) by one engaged in a forcible felony. The jury was instructed as follows:

> "A person is not justified in the use of force if he is attempting to commit or committing a forcible felony."
>
> "The term 'forcible felony' means burglary, robbery, aggravated battery, or any felony which involves the use or threat of physical force or violence against any individual."

Defendant argues that these instructions were confusing to the jury because he was not charged with any offense of attempt, nor was he charged with burglary, robbery, or aggravated battery. The only argu-

able forcible felony with which defendant was charged was home invasion, of which he was acquitted.

We note that during the jury-instruction conference, defendant objected to the giving of all the instructions which he claims on appeal were erroneously given. Defendant also raised the giving of these instructions as error in his post-trial motion.

We agree with defendant that the instructions given were erroneous. We note that the State does not contest this issue but assumes in its argument on appeal that the instructions were erroneously given. The State argues only that defendant was not prejudiced by the giving of the instructions.

■■ We agree with defendant that the legislature did not intend that a charge of armed violence be predicated upon the offense of first-degree murder, which in all its forms carries a greater penalty than does armed violence. The purpose of the armed violence statute is to enhance the penalty for the underlying felony when a dangerous weapon is used in its commission. (*People v. Rudd* (1980), 90 Ill. App. 3d 22, 25-26, 412 N.E.2d 982, 984.) This purpose cannot be achieved where the underlying felony, whether based on armed conduct or unarmed conduct, carries a greater penalty than armed violence. The stiff punishment mandated by the armed violence statute is intended to deter the criminal from carrying a weapon while committing a felony. (*People v. Alejos* (1983), 97 Ill. 2d 502, 509, 455 N.E.2d 48, 51.) The possibility of being charged with armed violence cannot possibly act as a deterrent to carrying a weapon while committing a murder because murder carries a stiffer penalty than does armed violence. Thus, the armed violence statute can serve no deterrent purpose when applied to the offense of first-degree murder. Accordingly, just as a charge of armed violence cannot be predicated on the offenses of voluntary manslaughter (second-degree murder) (*Alejos*, 97 Ill. 2d at 513, 455 N.E.2d at 53) and involuntary manslaughter (*People v. Fernetti* (1984), 104 Ill. 2d 19, 24-25, 470 N.E.2d 501, 503) because it would have no deterrent effect, a charge of armed violence cannot be predicated on the offense of first-degree murder. Application of the armed violence statute to the offense of first-degree murder would not further the intent of the legislature. Accordingly, the trial court erred in instructing the jury on the offense of armed violence predicated on first-degree murder.

■■ The trial court also erred in giving the State's tendered instructions on justifiable use of force by one engaged in a forcible felony. Neither of the instructions given follows the Illinois Pattern Jury Instructions. Those instructions, which read as follows, provide that

only the applicable bracketed material be used in the instruction given to the jury:

> "A person is not justified in the use of force if he is [(attempting to commit) (committing) (escaping after the commission of)] a forcible felony." Illinois Pattern Jury Instructions, Criminal, No. 24—25.10 (2d ed. 1981).
>
> "The term 'forcible felony' means [(treason) (first degree murder) (second degree murder) (aggravated criminal sexual assault) (criminal sexual assault) (robbery) (burglary) (arson) (kidnapping) (aggravated battery) (_____)]." (Illinois Pattern Jury Instructions, Criminal, No. 4.05 (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d No. 4.05 (Supp. 1989)).)

The committee note to the latter instruction directs to insert in the blank where appropriate "any felony which involves the use or threat of physical force or violence against any individual." IPI Criminal 2d No. 4.05 (Supp. 1989), Committee Note, at 72.

In the instant case, we note that the jury was instructed that the defendant could not rely on self-defense to justify the killing if he was attempting to commit or committing burglary, robbery, or aggravated battery, but the jury was never instructed on the elements of the offenses of attempt, burglary, robbery, or aggravated battery. The third edition of the Illinois Pattern Jury Instructions, which was promulgated after defendant's trial, makes it clear that the particular forcible felony being relied upon by the State to defeat the defense of self-defense must be specified in the instructions and must be defined to the jury. See Illinois Pattern Jury Instructions, Criminal, Nos. 4.05, 24—25.10 (3d ed. 1992).

■ We think the giving of these erroneous instructions served to confuse the jury and, more importantly, may have deprived the defendant of his defense of self-defense upon which he might have been acquitted of all charges. (We note that the jury did not necessarily consider an unreasonable belief in the need to exercise self-defense as it could have found defendant guilty of second-degree murder based on provocation.) The jury was left to speculate, without any defining instructions, whether defendant was prohibited from relying on self-defense because at the time of the killing he was engaged in one of several undefined forcible felonies. The offense of home invasion, with which defendant was charged and which was defined to the jury, was not listed as one of the forcible felonies which the jury could consider.

There is little doubt that the jury was confused by the instructions it received. During the course of its deliberations, it sent two notes to the judge inquiring, respectively, "Do you find a person guilty of 1st degree

murder and then find him guilty of 2nd degree murder instead[?]" and "Can possible self defense be a reason to be judged innocent of these charges[?]" The jury's verdicts of not guilty of first-degree murder but guilty of armed violence based on first-degree murder also evidence the jury's confusion. Finally, during the hearing on defendant's post-trial motion, the trial court recognized that the jurors "obviously were confused," and the court stated, "[I]t was clear they were confused all the way through about first degree and second degree murder." The court also recognized that many of the signs of jury confusion were not of record in the case. The court found, however, that any confusion "was caused by the Pattern instructions themselves and not by anything unique to this particular case."

Jury instructions should be neither misleading nor confusing and should fully and fairly inform the jury of the applicable law. (*People v. Godbout* (1976), 42 Ill. App. 3d 1001, 1009, 356 N.E.2d 865, 872.) A defendant is entitled to have the jury so instructed that it may not become confused as to what constitutes the issue before it. (*People v. Nugin* (1981), 99 Ill. App. 3d 693, 697, 425 N.E.2d 1163, 1166.) The erroneous instructions in the case at bar were misleading and confusing and may have deprived defendant of his defense of justifiable use of force. Accordingly, we find that defendant was prejudiced by the trial court's errors in instructing the jury. We must, therefore, reverse defendant's conviction and sentence and remand this cause to the circuit court of Madison County for a new trial.

Of course, on retrial, defendant may not be tried for the offense of first-degree murder, his conviction for second-degree murder having the effect of an acquittal of the graver charge of first-degree murder. The doctrine of double jeopardy bars any further prosecution on the greater offense of first-degree murder. *People v. Keith* (1978), 66 Ill. App. 3d 93, 102, 383 N.E.2d 655, 662; see also *People v. Newbern* (1991), 219 Ill. App. 3d 333, 352-358, 579 N.E.2d 583, 596-599; *People v. Timberson* (1991), 213 Ill. App. 3d 1037, 573 N.E.2d 374.

In light of our decision herein, we find it unnecessary to discuss the other claims of error raised by defendant as they are unlikely to occur on retrial.

For the foregoing reasons the judgment of the circuit court of Madison County is reversed, and this cause is remanded to the circuit court of Madison County for a new trial.

Reversed and remanded.

CHAPMAN, P.J., and LEWIS, J., concur.