Rhenna Navajo EDWARDS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–75–348.

Court of Criminal Appeals of Oklahoma.

Nov. 24, 1975.

Rehearing Denied Jan. 5, 1976.

Peter K. Schaffer, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jahn D. Rohrer, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Rhenna Navajo Edwards, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRM–74–3211, for the offense of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor, a violation of 47 O.S. § 11–902. Defendant was sentenced to serve a term of six (6) months imprisonment which was suspended except for the first ten (10) days, and was fined in the amount of One Hundred Fifty ($150.-00) Dollars. From said judgment and sentence a timely appeal has been perfected to this Court.

■ Defendant's sole assignment of error constitutes a question of law, the resolution of which neither requires nor necessarily turns upon a recitation of the facts therein. Defendant contends that the District Court committed error when, during a hearing to consider a Motion to Suppress Evidence, it refused to grant defendant's Motion and ruled to admit the evidence in question, specifically, the results of a breathalyzer test to which defendant had voluntarily subjected himself. Defendant maintains that the intentional though nonmalicious destruction of certain components employed in the instrument's normal operation deprived him of an opportunity to examine the evidence against him and amounted to the destruction of material evidence which could have potentially established his guilt or innocence; that the District Court's admission of the results of the breathalyzer test deprived defendant of a fair trial and thereby denied him his right to due process. In so claiming, defendant predicates his argument on the opinion issued by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1960), wherein the accused had requested and was denied information deliberately withheld by the State, a violation, it was found, of the accused's right to due process. Though the suppression of evidence is not at issue here, an important factor which distinguishes this case from *Brady*, its destruction does pose a similar problem in that it is no longer available and the possibility for re-examination simply does not exist. Defendant argues that if the evidence destroyed had been preserved, it would have afforded him an op-

portunity not only to invalidate the test result, but also to obtain evidence material to a determination of his innocence as to the offense charged. He maintains that, in its absence, the District Court, if the ruling in *Brady* is to be observed and his right to a fair trial to be protected, had no other choice but to exclude the test result from its deliberations. With this we cannot agree.

The breathalyzer, an apparatus especially designed to analyze a sample of breath as a means by which the alcoholic content of the blood may be determined, is considered a reliable device for measuring levels of intoxication. *Alexander v. State*, Okl.Cr., 305 P.2d 572 (1956). Defendant does not purport to question the court's acceptance of either the technological basis upon which the instrument operates or the results derived from its use generally, rather, he does instead claim as his right the opportunity to challenge the technical accuracy of the particular device employed in the examination to which he himself was subjected. The component to which he specifically refers may be described as a sealed glass vial or ampoule, containing a prepared, mixed chemical solution which is considered an essential factor in this system of measurement. It is the content of the ampoule to which the sample breath is exposed, and once exposed, acts to directly influence the reading of a gauge on the device which is calibrated in terms of percentage of alcohol in the blood. Defendant, in support of his argument, almost totally relies upon the decision rendered in *People v. Hitch*, 12 Cal.3d 641, 117 Cal. Rptr. 9, 527 P.2d 361 (1974), by the California Supreme Court wherein the ampoules, in a situation which compares similarly to the one here present, were deemed to have a sufficiently important evidentiary nature that their actual destruction, by the result of established procedure, "could only operate to deprive [the] defendant of a fair trial."

We understand the opinion proferred in *Hitch* to mean that both where the evidence is material to the issue of guilt or innocence with respect to the charge against the accused, and where it is clearly a matter involving the failure of the prosecuting authorities to take adequate steps to preserve the same, the only fair and proper remedy available to the court would include the exclusion of said evidence from its consideration. However, we are not convinced as was the California Court in *Hitch* that the evidence here in question is actually material with respect to the issue of the guilt or innocence of the defendant. True, given the very definite wording of 47 O.S. § 756, subsection c, in regard to the specific measurement established by the Legislature as prima facie evidence of a state of intoxication, we cannot do other than accept defendant's contention that the results of the breathalyzer test would constitute material evidence with a direct bearing upon defendant's guilt or innocence. See *Custer v. Oklahoma City*, Okl.Cr., 481 P.2d 788 (1971). This is not to suggest, however, that a similar significance would automatically attach to each component in the breathalyzer machine simply because it contributes to the normal operation of the instrument. To adopt this line of reasoning would have the undesired effect of exposing to continuous question any mechanical device or scientific method used by law enforcement officials in the performance of their duties not on the basis of improper use, but rather on the ground that these devices and methods are technically unsound and incapable of achieving the expected results. A situation such as this might well lead to the limited to even discontinued use of methods and scientifically devised apparatus the need for and the value of which have often been recognized and repeatedly proven. This Court has traditionally favored, in the interest of maintaining public order, the use of any device which may be described as having demonstrated a high degree of accuracy and reliability in the furtherance of the State's effort to deal fairly and effectively with the threat directed at the public

for violations such as these herein charged. *Toms v. State,* 95 Okl.Cr. 60, 239 P.2d 812 (1952). It has, however, in the past, and will continue in the future, to recognize that the adoption of such devices is basically a decision to be made by the Legislative branch as a legitimate exercise of its power in the service of the public interest, and that once that body has made its election as to the method and manner it will pursue in the discharge of this duty, its choice will not then be subjected to judicial restraint, "unless its application and enforcement impinges upon constitutional guarantees." *Woody v. State Corporation Commission,* Okl., 265 P.2d 1102 (1954). Among these guarantees we note, is the defendant's right, within the meaning of due process of law, to a fair trial. In *Brady,* the Supreme Court, ruling that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ," in effect qualified the circumstances under which suppressed or missing evidence would be deemed a violation of ones constitutional rights.

Though the court below was not in a position to examine the evidence itself, it was not thus prevented from first, deciding whether the particular evidence in question would have been favorable to the accused, and second, determining whether or not such evidence was in fact material to the issue of the guilt or innocence of the defendant with respect to the crime charged. An examination of the record shows only that the defendant sought to raise the possibility of there existing a defect in the ampoules used; that no effort was made to offer expert testimony as to scientific manner or methods which could be employed in examining the ampoules, or, for that matter, as to the likelihood that the physical nature of the evidence would be found to be of any actual value to defendant. At best, given the inevitable decomposition of a chemical solution within the vial and its alteration through use, defend-

ant's arguments constituted mere speculation on his part, with nothing more advanced to realistically suggest the probability that information of any definite value would be obtained from any recognized or reliable process of re-examination, or that the results of this particular endeavor would have been favorable to the defendant.

■ The destruction of the ampoules is mandated under the rules promulgated by the Board of Chemical Tests for Alcoholic Influence which has, by statutory design, the authority "to approve satisfactory techniques, methods and equipment for chemical tests for alcoholic influence . . . ." 47 O.S. § 759. The Board, we may conclude, is the agency chosen to be primarily responsible for devising a procedure to insure not only the proper maintenance and operation of devices such as the one herein involved, but also the level of accuracy such tests are scientifically and technologically capable of performing at. *Westerman v. State,* Okl.Cr., 525 P.2d 1359 (1974). We have previously passed judgment upon and have confirmed the constitutionality of the Legislature's delegation to the Board of the authority it now exercises in standardizing the devices to be utilized and enforcing procedures to be followed in determining degrees of intoxication. *Synnot v. State,* Okl.Cr., 515 P.2d 1154 (1973). The test to which defendant was subjected was one in which there had been, as stipulated by the parties, complete conformity to an involved process of examination, rendered in an approved fashion and through an instrument which, it has been shown, met the required level of operational competence. In opinions rendered by courts in the states of Washington and North Dakota, in *State v. Baker,* 56 Wash.2d 846, 355 P.2d 806 (1960) and *State v. Miller,* 146 N.W.2d 159 (1966), respectively, any testing of the ampoules as to their chemical content prior to insertion in the breathalyzer was adjudged to have the effect of rendering these particular components absolutely useless as to the

function they were to subsequently perform. Testimony in the record before us fairly substantiates this conclusion. (Tr. 3 & 4). We are left, then, to conclude, as apparently did the Board, that there is presently but one practical and effective way to determine whether the ampoule is functionally sound in all the respects suggested in defendant's brief and, by subjecting the same device to another, similar examination, using a controlled sample of a known alcoholic concentration as prescribed by the Board, that such a determination was in fact made on this occasion. *Penny v. State,* Okl.Cr., 410 P.2d 553, at 558 (1966).

The ampoules, we note, may indeed provide an accused with an opportunity to impeach the test results as recorded by the breathalyzer, that is, to challenge, on strictly technical grounds, the represented degree of accuracy of any specific breathalyzer device, but such an effort if successful, could only reflect on the credibility or weight to be given the test result and could not, by itself, have conclusively established the innocence of the accused. See *People*

*v. Hitch,* supra, 12 Cal.3d 641, 17 Cal.Rptr. at 18, 527 P.2d at 370. The test results, therefore, cannot be considered material in the very same context to which the Court in *Brady* addressed itself. A re-examination of the ampoules, if technically feasible, would fall short of producing evidence which could be characterized as material as to the issue of guilt or innocence. Defendant's objection goes more properly to the weight to be assigned the test result in the lower court's evaluation of the facts as presented, than to its admissibility, given the strict adherence here in evidence to the rules and procedures established by the Board for the conduct of such examinations. We are satisfied that the defendant's trial was a fair one and that his right to due process of law was in no way impaired by the lower court's decision to admit the evidence in question.

For all of the above and foregoing reasons, the judgment and sentence appealed from is accordingly

*Affirmed.*

BUSSEY and BLISS, JJ., concur.