Stephen Lynn MANNING, Appellee,

v.

STATE of Oklahoma ex rel. DE-PARTMENT OF PUBLIC SAFETY, Appellant.

No. 81234.

Court of Appeals of Oklahoma, Division 1.

Aug. 30, 1994.

8. Although not argued below, the trial court's attention is called to *Wilhelm v. Gray*, 766 P.2d 1357 (Okla.1988).

1378

Lisa McLaughlin–Molinsky, Dept. of Public Safety, Oklahoma City, for appellant.

Jose Gonzalez, Suzanne Woodrow, Gonzalez & Woodrow, Purcell, for appellee.

## MEMORANDUM OPINION

CARL B. JONES, Judge:

We are presented in this case the question whether failure to produce an excess breath sample, taken from a driver who consented to undergo breath testing for alcohol, warrants suppression of all evidence offered by the Department of Public Safety [DPS] in a district court license revocation proceeding. We answer that question in the negative.

From the admitted and proffered evidence in the trial court record, we have reconstructed the following "facts": [1]

On August 26, 1991, Trooper Phillip Ellyson ["Trooper"] of the Oklahoma Highway Patrol observed Appellee Stephen Manning speeding at 92 miles per hour and making an improper lane change on Interstate 35 in McClain County. Trooper stopped Manning, smelled an odor of alcohol about Manning's person, and noted that Manning's eyes were bloodshot and that he was unusually talkative. Trooper concluded that Manning might be under the influence of alcohol, and so, after reading him a standard implied consent statement, asked Manning to submit to a breath test. Manning consented. Trooper then escorted Manning to the police department in Lexington and conducted a breath alcohol test by means of a Stephenson Model 900 breathalyzer.

The breathalyzer tested Manning's breath, and also trapped a second sample of his breath in an ampoule known as a "ToxTrap." Under state law, a second breath sample must be obtained whenever an alcohol breath test is performed, and the separate breath sample must be retained "by the law enforcement agency employing the arresting officer" for sixty days after the test is performed. 47 O.S.1992 Supp. § 752(F). Within that period, the tested person may ask for the duplicate sample to be sent or delivered to a laboratory of that person's own choosing, in order to obtain an independent breath analysis. *Id.*

Manning's breath test showed a blood alcohol concentration of 0.10 grams per 210 liters of breath, the minimum concentration to establish a prima facie case of driving under the influence of alcohol. [2] Trooper issued Manning a notice of license revocation, and took the second breath sample with him when he left. Within the statutory period,

1. Inasmuch as we rely on an incomplete record, consisting in large part of proof offered by DPS and testimony to which DPS objected at trial, and because we have determined that remand for new trial is required, we enclose the word "facts" within quotes. Nothing in this opinion should be construed as foreclosing offer or admission of evidence on retrial which is consistent or inconsistent with our recitation of these "facts."

2. 47 O.S.1991 § 756(c). Breath test results showing a concentration greater than 0.05, but less than 0.10, are deemed relevant evidence that a driver was impaired by alcohol.

Manning's attorney wrote to Trooper[3] and to the Lexington Police Department asking each of them to forward any retained sample of Manning's breath in their possession to a medical laboratory in Oklahoma City. Receiving no response, Manning's attorney later spoke to Trooper in person, and also spoke with an evidence officer at Trooper's troop headquarters, trying to locate the second sample, all to no apparent avail.

In the meantime, Manning also sought review of the license revocation. DPS upheld the revocation, and Manning then commenced an appeal[4] in the trial court. The trial court heard testimony from Manning's attorney and received documentary exhibits relating to attempts by counsel to obtain the second breath sample. After learning that DPS had not furnished the duplicate breath sample after Manning's request, the trial court ruled that DPS would not be able to introduce *any* evidence. DPS then made an offer of proof of the documentary evidence which it would have presented in its case in chief, had it been permitted to do so: Trooper's affidavit and notice of revocation form, which included the breathalyzer primary and reference test results when Manning was tested; a maintenance log for the breathalyzer Trooper used for the test; several documents which described the test procedures to be followed for breath testing on this model of breathalyzer. DPS also offered to prove by Trooper's testimony the circumstances of Manning's stop and arrest, the procedure he followed in performing the breath test on Manning, that such procedure conformed to the those officially adopted by the state Board of Testing for Alcohol and Drug Influence, that he was qualified to perform the test, and that the breathalyzer was in proper working order when the test was performed.

At the conclusion of the hearing on Manning's appeal, the trial court reiterated its refusal to admit DPS's evidence. "It's a failure of DPS to provide the TOXTRAP,"

the court stated. "The TOXTRAP is a very important safeguard to the citizens of our state and to the citizens of the nation, and it's not something to be dealt with lightly." The trial court then vacated revocation of Manning's license, and DPS appealed to this court.

■ Relevance and admissibility of evidence are matters entrusted to the sound legal discretion of the trial court. *James v. State Farm Mutual Auto. Ins. Co.*, 810 P.2d 365, 371 (Okla.1991); *Jordan v. General Motors Corp.*, 590 P.2d 193, 196 (Okla.1979). We review those matters in the light of the legal issues defined by statutory or common law.

The issues on de novo district court hearing of this sort of license revocation proceeding are defined by statute:

(1) whether the arresting officer had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle in some public place in the state while under the influence of alcohol;

(2) whether the person was placed under arrest;

(3) whether the procedures followed to test the person's breath were in accordance with the rules of the Board of Tests for Alcohol and Drug Influence;

(4) whether the tested person was advised that his or her privilege would be revoked if the test result was equal to or greater than 0.10;

(5) whether the test result in fact showed such a blood alcohol on;

(6) whether the breath sample was obtained within two hours of the arrest.

47 O.S.1991 § 754(E); *Smith v. State ex rel. Department of Public Safety*, 680 P.2d 365, 368 (Okla.1984); *see Burris v. State ex rel. Department of Public Safety*, 785 P.2d 332, 334 (Okla.1989).

---

**3.** The letter was addressed to Trooper at the troop headquarters in south Oklahoma City instead of the main DPS office on Martin Luther King Ave.

**4.** Though designated an "appeal," district court review of DPS revocation proceedings is conducted as a de novo hearing on the merits. 47 O.S.1991 § 6–211(A).

Manning insists he was prejudiced by DPS's failure to furnish the other breath sample. Manning does not assert that the evidence proffered by DPS was irrelevant or inadmissible. He complains only that he was deprived of the opportunity to obtain a test of the second breath sample. In large part, his assertion of prejudice is built upon a slender reed of supposition—that, had he obtained an independent test of the excess breath sample, he *may* have been able to impugn the accuracy of the breathalyzer. Yet, he did not even attempt to question the test results in any other way. We are therefore left only with Manning's speculation that the results of a test on the excess sample would have been favorable to him. We will not indulge such speculation to justify wholesale exclusion of otherwise relevant and admissible evidence. *See Edwards v. State,* 544 P.2d 60, 63 (Okla.Ct.Crim.App.1976) (defendant's contention that if breath ampoule not been destroyed he would have been able to obtain information of value to his defense was merely speculative).

We also reject Manning's suggestion that he suffered any prejudice of a constitutional dimension. The Court of Criminal Appeals held in *Edwards* that destruction of a breath ampoule which was neither deliberate nor malicious did not deprive the defendant of a fair trial in violation of the Due Process Clause. *Edwards v. State,* 544 P.2d at 64.

We note in this regard a fundamental distinction between this case and the criminal prosecution in *Edwards,* which serves to confirm our conclusion. A license revocation proceeding places only the privilege of driving on public roads at issue, and is thus distinguishable from a criminal proceeding against the driver in which the defendant's liberty and property interests are at stake. *Price v. Reed,* 725 P.2d 1254, 1259 (Okla. 1986) [criminal trial exacts a personal penalty from the defendant in the form of a fine or incarceration, while driver's license proceeding involves only the question of a person's continued fitness to hold a license]. A license revocation proceeding simply does not involve a contract or property right in the constitutional sense. *See Robertson v. State ex rel. Lester,* 501 P.2d 1099, 1101 (Okla.1972) [operation of motor vehicle is a conditional privilege subject to regulation under the state's police powers].

We therefore hold that the trial court abused its discretion by excluding all of the evidence offered by DPS. We reverse the trial court's judgment, and remand this case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

HANSEN, P.J., concurs.

BAILEY, J., not participating.