Randy W. BRYANT, Appellee,

v.

The COMMISSIONER OF THE DE-
PARTMENT OF PUBLIC SAFETY,
STATE OF OKLAHOMA, Appellant.

No. 87135.

Supreme Court of Oklahoma.

Dec. 24, 1996.

As Corrected Jan. 8, 1997.

Rehearing Denied March 14, 1997.

Michael Gardner, Purcell, for Appellee.

Blair Easley, Oklahoma City, for Appellant.

KAUGER, Vice Chief Justice.

The issue presented is whether the unexcused or inexcusable failure of the Department of Public Safety to provide a breath sample which was timely requested for independent testing pursuant to 47 O.S.1991 § 752(F),[1] affects the appellee's administrative driver's license revocation. We find that the unexcused or inexcusable failure of DPS to provide a breath sample for independent testing which was timely requested pursuant to 47 O.S.1991 § 752(F), rendered its breathalyzer test results inadmissable insofaras its administrative revocation of his driver's license is concerned. Nevertheless, the trial court may consider other competent evidence bearing on the question of whether the person was under the influence of alcohol or any other intoxicating substance.

## FACTS

The appellee, Randy Bryant (appellee/driver) was arrested for driving under the influence of alcohol on April 23, 1994, in McClain County, Oklahoma. The driver agreed to submit to a breathalyzer test, which reflected a blood alcohol level of .11.[2] Subsequently, the appellant, the Department of Public Safety (DPS), revoked his driver's license for 180 days. The driver requested an administrative hearing to review DPS revocation.[3]

A few days later, the driver's lawyer wrote to DPS requesting, pursuant to 47 O.S.1991 § 752(F),[4] that a sample of his breath be sent to an independent lab for testing. On July 8, 1994, an administrative hearing was held before a hearing officer appointed by the Commissioner of Public Safety. The hearing officer affirmed DPS revocation.

On August 28, 1994, the driver filed a petition in district court, requesting that the trial court reverse the Department of Public Safety's revocation of his driver's license.[5] In January of 1995, DPS wrote the driver's attorney a letter which provides in pertinent part:

"... The request made by you for the retention sample of Randy Bryant to be sent for analysis to the Oklahoma University Toxicology Laboratory was not processed due to the fact that the sample was destroyed June 28, 1994. Your request for the sample to be sent was inadvertently misfiled while I was on vacation and not located until it was past the date of disposal.

The request for the copy of the log of test and maintenance record was on the same letter as the request for retention sample. After completion of the request for the log of tests to be sent to your office the letter was filed as completed. The request for the retention sample was overlooked.

We are sorry for any inconvenience we may have caused you, or your client. If there is anything else other than this letter we can do, please don't hesitate to contact the A.D.C.U. Division...."

At his district court hearing, the driver argued that the failure of DPS to provide the sample of his breath rendered the test result inadmissable, and that it was grounds for setting aside his driver's license revocation.[6]

---

1. Title 47 O.S.1991 § 752(F), see note 10, infra.

2. Title 47 O.S.1991 §§ 756 & 11–902 define anyone with a blood or breath alcohol concentration of at least ten-hundredths (0.10) as under the influence of alcohol.

3. See, 47 O.S.1991 § 754, which allows a person whose driving privilege has been revoked or denied, the opportunity for a hearing.

4. Title 47 O.S.1991 § 752(F), see note 10, infra.

5. See, 47 O.S.1991 § 6–211.

6. See, 47 O.S.1991 § 754(E)(1) which defines the issues to be addressed in a driver's license revo-

On February 16, 1996, the trial court set aside DPS revocation. It found that: 1) DPS failed to comply with the rules of the Board of Tests for Alcohol and Drug Influence; and 2) under *Westerman v. State*, 525 P.2d 1359 (Okla.Cr.1974), the results of the breath test were inadmissible. DPS appealed and on May 31, 1996, the Court of Civil Appeals reversed and remanded, relying on *Manning v. State* ex rel *DPS*, 887 P.2d 1377 (Okla.App. 1994). It held that the trial court erred when it refused to admit the state's breath test results into evidence because the driver failed to show that DPS deliberately or maliciously destroyed his breath sample. We granted certiorari on October 7, 1996.

THE UNEXCUSED OR INEXCUSABLE FAILURE OF THE DEPARTMENT OF PUBLIC SAFETY TO PROVIDE A BREATH SAMPLE FOR INDEPENDENT TESTING WHICH WAS TIMELY REQUESTED PURSUANT TO 47 O.S.1991 § 752(F), RENDERED ITS BREATHALYZER TEST RESULTS INADMISSABLE INSOFARAS ITS ADMINISTRATIVE REVOCATION OF THE APPELLEE'S DRIVER'S LICENSE IS CONCERNED. NEVERTHELESS, THE TRIAL COURT MAY CONSIDER OTHER COMPETENT EVIDENCE BEARING ON THE QUESTION OF WHETHER THE PERSON WAS UNDER THE INFLUENCE OF ALCOHOL OR ANY OTHER INTOXICATING SUBSTANCE.

■ The driver argues that: 1) DPS ignored the mandates of 47 O.S.1991 § 752(F),[7] as well as the Rules of the Board of Tests for Alcohol and Drug Influence (the Board), OAC 40:20–1–4,[8] when it failed to provide a sample of his breath for independent testing; and 2) because DPS failed to follow § 752(F) and the Rules of the Board, OAC 40:20–1–4, his statutory rights were denied and his driver's license revocation should be set aside. DPS contends that its inability to produce a sample of the driver's breath for independent testing has no effect whatsoever on the revocation.[9]

Under Oklahoma law, when a police officer subjects a person to a breath test to determine alcohol concentration, 47 O.S.1991 § 752(F)[10] mandates that a sufficient quantity of breath be obtained and retained for 60

cation proceeding. The scope of the hearing includes, among other issues, the issue of whether the testing procedures used were in accordance with existent rules of the Board of Tests for Alcohol and Drug Influence.

We note, however, that his statute has been amended effective Nov. 1, 1996, and the amended version includes the issues of whether the person was not denied a timely requested breath or blood test; and whether the person was informed that a separate testing of the sample taken by the breathalyzer can be analyzed by the person at his or her own expense within sixty (60) days of the test date.

7. Title 47 O.S.1991 § 752(F), see note 10, infra.

8. OAC 40:20–1–4, see note 12, infra.

9. DPS also argues that 47 O.S.1991 § 752(I) is contrary to the driver's position. We find this argument unpersuasive. Section 752(1) applies only when a DUI suspect is not requested by a law enforcement officer to submit to a test and it relates to an arrestee's failure or inability to arrange the test or to have an independent test performed. Nevertheless, it does not address the admissibility of the results of the test. Rather, it concerns other competent evidence concerning the stop and arrest. Section 752(I) provides:

"Any person who has been arrested for any offense arising out of acts alleged to have been committed while the person was operating or in actual physical control of a motor vehicle while under the influence of alcohol, any other intoxicating substance or the combined influence of alcohol and any other intoxicating substance who is not requested by law enforcement officer to submit to a test shall be entitled to have an independent test of his or her blood, breath, saliva or urine which is appropriate as determined by the Board for the purpose of determining its alcohol concentration or of any other intoxicating substance therein, performed by a person of his or her own choosing who is qualified as stipulated in this section. The arrested person shall bear the responsibility for making all necessary arrangements for the administration of such independent test and for the independent analysis of any specimens obtained, and bear all costs thereof. The failure or inability of the arrested person to obtain an independent test shall not preclude the admission of other competent evidence bearing upon the question of whether such person was under the influence of alcohol, or any other intoxicating substance or the combined influence of alcohol and any other intoxicating substance."

10. Title 47 O.S.1991 § 752(F) provides in pertinent part:

"... When a test of breath is performed for the purpose of determining the alcohol concentra-

days so that a person may have an independent laboratory conduct a test.[11] The Rules for the Board of Tests for Alcohol and Drug Influence, OAC 40:20-1-4,[12] also require that a sample of a person whose breath has been tested be retained and made available for sixty days from the date of collection. To be considered valid and admissible in evidence, the tests must have been administered in accordance with the rules and regulations of the Board.[13] It is undisputed that DPS failed to furnish the driver a sample of his breath for independent testing. Consequently, the determinative issue is whether DPS's unexcused or inexcusable failure to provide a breath sample should affect his driver's license revocation.

> tion thereof, a sufficient quantity of breath, or of the alcohol content of a fixed or measured quantity of breath, shall be obtained, in accordance with the rules and regulations of the Board to enable the tested person, at his or her own option and expense, to have an independent analysis made of such specimen. The excess specimen of breath, or of its alcohol content, shall be retained by the law enforcement agency employing the arresting officer, in accordance with the rules and regulations of the Board, for sixty (60) days from the date of collection. At any time within that period, the tested person, or his or her attorney, may direct that such specimen be sent or delivered to a laboratory of his or her own choosing and approved by the Board for an independent analysis. Neither the tested person, nor any agent of such person, shall have access to the additional specimen of breath, or of its alcohol content, prior to the completion of the independent analysis and agents of the analyst."
> (Emphasis supplied).

This statute was amended in 1992, however the pertinent portions remain unchanged.

11. *Oglesby v. Liberty Mut. Ins. Co.*, 832 P.2d 834, 844 (Okla.1992) (The use of "shall" by the Legislature is normally considered as a legislative mandate equivalent to the term "must.")

12. OAC 40:20-1-4 provides in pertinent part:

> "... Collection, retention and storage, transfer, and subsequent (delayed) analysis of retained breath-alcohol specimens, under the provisions of 47 O.S., Section 751-759 and 3 O.S., Section 303, shall be performed as set forth in this Section.
> . . .
> Each retained breath-alcohol specimen, in its sealed envelope or other sealed container, shall be kept and stored by the law enforcement agency for sixty (60) days from the date of collection, unless dispatched prior thereto ·

DPS relies on *Manning v. State* ex rel. *Dept. of Public Safety*, 887 P.2d 1377, 1380 (Okla.App.1994), for the proposition that its failure to provide an independent breath sample has no effect on a driver's license revocation. In *Manning*, a driver, who was stopped by a police officer, consented to submit to a breath test. The breath test showed a .10 blood alcohol concentration, and the officer issued the driver a notice of license revocation. Within the statutory period, the driver requested that his excess breath sample be sent to an independent lab for testing, but DPS failed to provide the sample. In the meantime, DPS upheld the driver's revocation. The driver sought review of DPS in district court.

> to an approved Forensic Alcohol Laboratory as provided in this Section. After the expiration of sixty (60) days from the date of such collection, all such retained breath-alcohol specimens, other than those dispatched to an approved Forensic Alcohol Laboratory as provided in this Section, shall be promptly and safely destroyed by the law enforcement agency, unless other such retained breath-alcohol specimens is directed by the State Director of Tests for Alcohol and Drug Influence.
> . . .
> Upon proper direction by the tested person or such person's agent to the law enforcement agency, received in accordance with such agency's policies, practices and procedures and within sixty (60) days from the date of collection of the retained breath-alcohol specimen, the law enforcement agency shall promptly send or deliver the retained breath-alcohol specimen obtained from such person or such person's to any Forensic Alcohol Laboratory which is approved by the Board of Tests for Alcohol and Drug Influence and was selected by such person or such person's agent...."

13. Title 47 O.S.1991 § 752(H) provides in pertinent part:

> "... Tests of blood or breath for the purpose of determining the alcohol concentration thereof, and tests of blood, saliva or urine for the purpose of determining the presence and concentration of any other intoxicating substance therein, under the provisions of this title, whether administered by or at the direction of a law enforcement officer or administered independently, at the option of the tested person, on the excess specimen of such person's blood, breath, saliva or urine, to be considered valid and admissible in evidence under the provisions of this title, shall have been administered or performed in accordance with the rules and regulations of the Board."

After learning that DPS failed to provide the driver with a duplicate breath sample for independent testing, the trial court ruled that DPS would not be able to introduce the evidence, and it vacated the revocation of the driver's license. On appeal, the Court of Civil Appeals reversed, finding that:

"... Manning's assertion of prejudice is built upon a slender reed of supposition— that, had he obtained an independent test of the excess breath sample, he may have been able to impugn the accuracy of the breathalyzer. Yet, he did not even attempt to question the test results in any other way. We are therefore left only with Manning's speculation that the results of a test on the excess sample would have been favorable to him. We will not indulge such speculation to justify wholesale exclusion of otherwise relevant and admissible evidence.... See *Edwards v. State*, 544 P.2d 60, 63 (Okla.Ct.Crim.App.1976) ...

We also reject Manning's suggestion that he suffered any prejudice of a constitutional dimension. The Court of Criminal Appeals held in Edwards that destruction of a breath ampoule which was neither deliberate nor malicious did not deprive the defendant of a fair trial in violation of the Due Process Clause...."

*Manning* was not approved for publication by this Court; and it has no precedential value pursuant to 20 O.S.1991 § 30.5.[14] Although, we agree that the facts of *Manning* are strikingly similar to the present cause, the authority it relied on is not supportive and we do not agree with its holding.[15] Consequently, we expressly overrule *Manning v. State* ex rel *DPS*, 887 P.2d 1377 (Okla.App. 1994), to the extent that it is inconsistent with this cause.

[2, 3] While § 752(F) and the Rules of the Board, OAC 40:20–1–4, require that a duplicate sample be made available upon request, they do not expressly address whether DPS's failure to provide a requested sample affects DPS's attempt to revoke a driver's license. Nevertheless, the Legislature is never presumed to have done a vain and useless thing.[16] Statutes must be read to render every part operative, and to avoid rendering it superfluous or useless.[17]

Section 752(F), as well as OAC 40:20–1–4, in clear and mandatory language impose a statutory duty on DPS to preserve ·a sample of a DUI suspect's breath for independent testing by the suspect for at least 60 days. The Legislature, in requiring that a sample be preserved for independent testing, provides a DUI suspect with a reasonable opportunity to obtain exculpatory evidence and strikes a fair balance between affording DUI suspects a genuine opportunity to defend themselves against a driver's revocation without adding any pointless burden on the state. It enables the DUI suspect to obtain independent evidence to refute a possible erroneous test result. Allowing DPS to admit its test results into evidence without providing a DUI suspect the opportunity to effectively challenge its test results as required by 47 O.S.1991 § 752(F) and the Rules of the Board, OAC 40:20–1–4, would effectively render both the statute and the rule useless. Consequently, we find that the unexcused or inexcusable failure of DPS to provide a breath sample for independent testing which was timely requested pursuant to 47 O.S.1991 § 752(F), rendered its breathalyzer test result inadmissible insofar as its administrative revocation of the appellee's

This statute was amended in 1992, however, the pertinent portions remain unchanged.

**14.** Title 20 O.S.1991 § ·30.5 provides in pertinent part:

"... No opinion of the Court of Appeals shall be binding or cited as precedent unless it shall have been approved by the majority of the Justices of the Supreme Court for publication in the official reporter ... "

**15.** Because we find that a violation of the driver's statutory right requires exclusion of the re-

sults of his breathalyzer test, we need not address whether the driver's due process rights were violated.

**16.** *Rogers v. Higgins*, 871 P.2d 398, 409 (Okla. 1993); *Cooper v. Dix*, 771 P.2d 614, 617 (Okla. 1989); *Farris v. Cannon*, 649 P.2d 529, 531 (Okla.1982).

**17.** *Medina v. State*, 871 P.2d 1379, 1383 (Okla. 1993); *Moore v. Hayes*, 744 P.2d 934, 937 (Okla. 1987); *State* ex rel., *Thompson v. Ekberg*, 613 P.2d 466–67 (Okla.1980).

driver's license is concerned.[18]

However, in ruling that suppression is the appropriate remedy here, we note that the record does not reflect that DPS acted in bad faith. Title, 47 O.S.1991 § 757 provides:

"The provisions of Sections 751 through 761 of this title do not limit the introduction of any other competent evidence bearing on the question of whether the person was under the influence of alcohol or any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance."

■ Accordingly, although the breathalyzer test results may not be admitted to attempt to revoke a driver's license when DPS fails to provide a properly requested sample for independent testing, other competent evidence which relates to the circumstances of the stop and arrest of a DUI suspect may be introduced into evidence. Here, the trial court, did not admit the test results and it appears from its findings that, as a result, it specifically found that DPS failed to meet its burden of proof regarding Bryant's driver's license revocation. Nevertheless, the trial court may consider other competent evidence bearing on the question of whether the person was under the influence of alcohol or any other intoxicating substance.

## CONCLUSION

When a police officer subjects a person to a breath test to determine alcohol concentration, 47 O.S.1991 § 752(F)[19] mandates that a sufficient quantity of breath be obtained and retained for 60 days to allow an independent laboratory also test their breath. Similarly, the Rules for the Board of Tests for Alcohol and Drug Influence, OAC 40:20–1–4,[20] also require that a sample of a person whose breath has been tested be retained and made available for sixty days from the date of collection. It is undisputed that DPS failed to furnish the driver the sample of his breath that he timely requested for independent testing. Allowing DPS to admit its test results into evidence without providing a DUI suspect the opportunity to effectively challenge its test results as required by 47 O.S. 1991 § 752(F) and the Rules of the Board, OAC 40:20–1–4, would effectively render both the statute and the rule useless. Accordingly, the unexcused or inexcusable failure of the DPS to provide a breath sample for independent testing which was timely requested pursuant to 47 O.S.1991 § ·752(F), rendered its breathalyzer test result inadmissable insofaras its administrative revocation of the appellee's driver's license is concerned. Nevertheless, the trial court may consider other competent evidence bearing on the question of whether the person was under the influence of alcohol or any other intoxicating substance. While we are in complete support of keeping our streets clear of drunk drivers DPS cannot nullify the statute by misplacing and prematurely destroying the sample. We expressly overrule *Manning v. State* ex rel *DPS*, 887 P.2d 1377 (Okla.App.1994), to the extent that it is inconsistent with this cause.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT AF-**

---

**18.** We note that there are many different factual circumstances which could deny a DUI suspect a reasonable opportunity to have an independent test made upon the suspect's request. Many circumstances involve police misconduct which denies the suspect an opportunity to obtain exculpatory evidence. The appropriate sanction for violating a suspect's right to an independent test under those circumstances would generally be either to exclude from evidence the test administered at the direction of the police officer or to dismiss the prosecution of the charges. See generally, the cases cited in Annot., "Drunk Driving: Motorist's Right to Private Sobriety Test," 45 A.L.R.4th 11 (1986). The failure here is similar to those circumstances in which DPS fails to follow the proper procedures in accordance with the rules and regulations of the Board in administering the test. Under those circumstances, the DPS test is inadmissable pursuant to 47 O.S. 1991 § 752(H), see note 13, supra. See also, *Westerman v. State*, 525 P.2d 1359, 1362 (Okla. Ct.Crim.App.1974). However, our holding is expressly limited to civil administrative driver's license revocation hearings and has no impact any criminal prosecutions which may result from an alleged driving under influence and even though these test results are inadmissable, other competent evidence may be considered.

**19.** Title 47 O.S.1991 § 752(F), see note 10, supra.

**20.** OAC 40:20–1–4, see note 12, supra.

FIRMED IN PART; REVERSED IN PART.

ALMA WILSON, C.J., and LAVENDER, OPALA, SUMMERS and WATT, JJ. concur.

HODGES and HARGRAVE, JJ. dissent.

SIMMS, Justice, dissenting:

I would not apply the exclusionary rule to the results of the breath test in these civil proceedings.