1998 OK CIV APP 16

1998 OK CIV APP 16

George S. NEARING, Plaintiff/Appellee,

v.

STATE of Oklahoma, ex rel., DEPART-MENT OF PUBLIC SAFETY, Defendant/Appellant.

No. 90295.

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 30, 1998.

Earl L. Reeves, Jr., Department of Public Safety, Oklahoma City, for Defendant/Appellant.

## OPINION

GARRETT, Judge:

¶ 1 Appellant, State of Oklahoma, ex rel., Department of Public Safety (DPS), appeals the judgment of the trial court which set aside the revocation of driver's license of Appellee, George S. Nearing. This appeal is submitted on Appellant's brief only. Therefore, this Court is under no duty to search the record for a theory to sustain the trial court's judgment if Appellant's brief is reasonably supportive of the allegations of error. If Appellant's brief is not so supportive, the trial court's decision will be affirmed. *Cooper v. Cooper,* 1980 OK 128, 616 P.2d 1154.

¶ 2 Nearing was arrested for Driving Under the Influence (DUI) on March 23, 1997. He submitted to a breathalyzer test conducted on a 900 Series machine. The Rules required taking and retaining a sufficient amount of specimen, or "tox-trap", for a later, independent analysis upon request by Nearing. The result of the breathalyzer test, taken two hours after his arrest, showed Nearing's blood alcohol level was .18, and his driver's license was revoked. Nearing requested an administrative hearing to have the revocation set aside because the arresting agency failed to provide a retained breath specimen for independent testing. See 47 O.S.Supp.1992 § 752(F):

F. When a test of breath is performed for the purpose of determining the alcohol concentration thereof, except when such test is performed by means of an automated analyzer as designated by the Board, a sufficient quantity of breath, or of the alcohol content of a fixed or measured quantity of breath, shall be obtained, in accordance

with the rules and regulations of the Board, to enable the tested person, at his or her own option and expense, to have an independent analysis made of such specimen. The excess specimen of breath, or of its alcohol content, shall be retained by the law enforcement agency employing the arresting officer, in accordance with the rules and regulations of the Board, for sixty (60) days from the date of collection. At any time within that period, the tested person, or his or her attorney, may direct that such specimen be sent or delivered to a laboratory of his or her own choosing and approved by the Board for an independent analysis. Neither the tested person, nor any agent of such person, shall have access to the additional specimen of breath, or of its alcohol content, prior to the completion of the independent analysis thereof, except the analyst performing the independent analysis and agents of the analyst.

¶ 3    At the June 10, 1997 administrative hearing, Nearing showed the hearing officer a copy of the request made by Nearing's attorney on April 28, 1997, for the independent analysis, addressed to the Oklahoma County Sheriff's Office, Oklahoma City. The hearing officer contacted the Sheriff's Office, but was advised by letter that a request had not been received by that office. Nearing's revocation was sustained by DPS on June 20, 1997, and Nearing filed an appeal in the district court.

¶ 4    At the hearing before the trial court, Nearing stipulated that the matters under 47 O.S.Supp.1997 § 754[1] were met, but took

---

1.  § 754. Seizure of license—Temporary driving privileges—Administrative revocation—Hearing

A.  Any arrested person who is under twenty-one (21) years of age and has any measurable quantity of alcohol in the person's blood or breath, or any person twenty-one (21) years of age or older whose alcohol concentration is ten-hundredths (0.10) or more as shown by a breath test administered according to the provisions of this title, or any arrested person who has refused to submit to a breath or blood test for alcohol concentration, shall immediately surrender his or her license, permit or other evidence of driving privilege to the arresting law enforcement officer. The officer shall seize any license, permit, or other evidence of driving privilege surrendered by the arrested person or found on the arrested person during a search.

B.  If the license, permit, or other evidence of driving privilege seized by the officer has not expired and otherwise appears valid to the officer, the officer shall issue to the arrested person a dated receipt for that license, permit, or other evidence of driving privilege on a form prescribed by the Department. This receipt shall be recognized as a license and shall authorize the arrested person to operate a motor vehicle for a period not to exceed thirty (30) days. The receipt form shall contain and constitute a notice of revocation of driving privilege by the Department of Public Safety effective in thirty (30) days. The seized license, permit, or other evidence of driving privilege and a copy of the receipt form issued to the arrested person shall be attached to the sworn report of the arresting officer and shall be submitted by mail or in person to the Commissioner of Public Safety or a designated representative within seventy-two (72) hours of the issuance of the receipt. The failure of the arresting officer to timely file this report shall not affect the authority of the Department to revoke the driving privilege of the arrested person.

C.  Upon receipt of a written blood or breath test report reflecting that the arrested person had any measurable quantity of alcohol in the person's blood or breath, if the person is under twenty-one (21) years of age, or, if the arrested person is twenty-one (21) years of age or older, an alcohol concentration of ten-hundredths (0.10) or more, accompanied by a sworn report from a law enforcement officer that the officer had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol as prohibited by law, the Commissioner of Public Safety shall revoke the privilege to drive of the arrested person and any nonresident operating privilege for a period as provided by Section 6–205.1 of this title. Revocation of the license of the arrested person shall become effective thirty (30) days after the arrested person is given written notice thereof by the arresting officer as hereinbefore provided or by the Department as provided in Section 2–116 of this title.

D.  Upon the written request of a person whose privilege to drive has been revoked or denied, the Commissioner of Public Safety shall grant the person an opportunity to be heard if the request is received by the Department within fifteen (15) days after the notice of the revocation is given in accordance with this section or Section 2–116 of this title. The request shall also operate to stay the revocation or denial by the Department until the disposition of the hearing unless the person is under suspension or revocation for some other reason. The Department may issue a temporary driving permit pending disposition of the hearing. If the hearing request is not timely filed, the revocation shall be sustained.

E.  1.  At any hearing held relevant to this section, a report of the findings of the laboratory of the Oklahoma State Bureau of Investigation,

exception to "the statutes and/or rules relating to what is commonly called a toxtrap or a retained specimen, specifically referenced Title 47, Section 752 F, and the rules relating to that, being Rule, Oklahoma Administrative Code, 40:20–1–4." Nearing's attorney advised the trial court that, at the time of the administrative hearing, the sample had not been sent to the laboratory as requested. He objected at that hearing because Nearing needed to have the independent testing conducted, but the revocation was sustained on June 27, 1997.

¶5  Nearing presented evidence, showing his request was received by the Sheriff's

the medical examiner's report of investigation or autopsy report, or a laboratory report from a forensic laboratory operated by the State of Oklahoma or any political subdivision thereof, which has been made available to the person by the Commissioner or an authorized representative at least five (5) days prior to the hearing, with reference to all or part of the evidence submitted, when certified as correct by the persons making the report shall be received as evidence of the facts and findings stated, if relevant and otherwise admissible in evidence. If such report is deemed relevant by either party, the court shall admit such report without the testimony of the person making the report, unless the court, pursuant to this subsection, orders such person to appear.

2.  When an alleged controlled dangerous substance has been submitted to the laboratory of the OSBI for analysis, and such analysis shows that the submitted material is a controlled dangerous substance, the distribution of which constitutes a felony under the laws of this state, no portion of such substance shall be released to any other person or laboratory absent an order of a district court. The defendant shall additionally be required to submit to the court a procedure for transfer and analysis of the subject material to ensure the integrity of the sample and to prevent the material from being used in any illegal manner.

3.  The court, upon motion of either party, shall order the attendance of any person preparing a report submitted as evidence in the hearing when it appears there is substantial likelihood that material evidence not contained in said report may be produced by the testimony of any person having prepared a report. The hearing shall be held and, if sustained, an order issued not less than five (5) days prior to the time when the testimony shall be required.

4.  If within five (5) days prior to the hearing or during a hearing, a motion is made pursuant to this section requiring a person having prepared a report to testify, the court may hear a report or other evidence but shall continue the hearing until such time notice of the motion and hearing is given to the person making the report, the motion is heard, and, if sustained, the testimony ordered can be given.

F.  The hearing shall be before the Commissioner of Public Safety or an authorized agent, in the troop headquarters of the Oklahoma Highway Patrol nearest the county wherein the alleged events occurred for which the person was arrested, unless the Commissioner of Public Safety or an authorized agent directs the hearing be held in some other county; or, the Commissioner or an authorized agent may schedule the hearing by telephone and conduct the hearing by telephone conference call. The hearing may be recorded and its scope shall cover the issues of whether the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol, any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance as prohibited by law, and whether the person was placed under arrest.

1.  If the revocation or denial is based upon a breath or blood test result and a sworn report from a law enforcement officer, the scope of the hearing shall also cover the issues as to whether:

a.  the testing procedures used were in accordance with existent rules of the Board of Tests for Alcohol and Drug Influence,

b.  the person was not denied a timely requested breath or blood test,

c.  the breath or blood specimen was obtained from the person within two (2) hours of the arrest of the person,

d.  the person, if under twenty-one (21) years of age, was advised that the privilege to drive would be revoked or denied if the test result reflected the presence of any measurable quantity of alcohol,

e.  the person was informed that a separate testing of the sample taken by the breathalyzer can be analyzed by the person at his or her own expense within sixty (60) days of the test date,

f.  the person, if twenty-one (21) years of age or older, was advised that the privilege to drive would be revoked or denied if the test result reflected an alcohol concentration of ten-hundredths (0.10) or more, and

g.  the test result in fact reflects such alcohol concentration;

2.  If the revocation or denial is based upon the refusal of the person to submit to a breath or blood test, reflected in a sworn report by a law enforcement officer, the scope of the hearing shall also include whether:

a.  the person refused to submit to the test or tests, and

b.  the person was informed that the privilege to drive would be revoked or denied if the person refused to submit to the test or tests.

G.  After the hearing, the Commissioner of Public Safety or an authorized agent shall order the revocation or denial rescinded or sustained.

Office, in the form of an affidavit from the acting Health Care Administrator for the Oklahoma County Jail, who stated the letter from Mr. Sifers, Nearing's attorney, was delivered to her by the mail room. She stated she spoke with Mr. Sifers, explaining she believed the letter was misdirected to her office, and he requested her to forward it to the proper office. A captain in the Sheriff's Office told her he would take care of it, as he knew where to deliver it, and she believed he had done so. DPS submitted a copy of a letter from its office, requesting the Sheriff's Office to send the sample to the address in Mr. Sifers' April 28, 1997 letter and to furnish DPS a copy of its submission of the sample. Evidence in the form of letters shows the sample was mailed to the Toxicology Laboratory at the Oklahoma Medical Center on July 31, 1997. The trial court ordered briefs and took the matter under advisement. One of the issues was the applicability of the Supreme Court's case of *Bryant v. Commissioner of the Dept. Of Public Safety*, 937 P.2d 496 (Okl.1996), in which the Court held the State's evidence of breath test results was inadmissible because the specimen retained for independent analysis had been destroyed preventing an independent analysis, despite the licensee's timely request. In the judgment filed October 1, 1997, in the instant case, the trial court vacated the revocation of Nearing driver's license, in effect ruling DPS's evidence of the breathalyzer test was inadmissible.

■ ¶ 6 *Bryant* and the instant case are distinguishable. The obvious distinguishing feature between *Bryant* and the instant case is the fact that the evidence was not destroyed herein. In *Bryant*, supra, the Supreme Court stated § 752(F) and OAC 40:20–1–4 impose a duty on DPS to preserve a sample for independent testing for at least 60 days and provides a DUI suspect:

> with a reasonable opportunity to obtain exculpatory evidence and strikes a fair balance between affording DUI suspects a genuine opportunity to defend themselves against a driver's revocation without adding any pointless burden on the state. It enables the DUI suspect to obtain independent evidence to refute a possible erro-

neous test result. Allowing DPS to admit its test results into evidence without providing a DUI suspect the opportunity to effectively challenge its test results as required by [statute and rule] would effectively render both the statute and rule useless. Consequently, we find that the unexcused or inexcusable failure of DPS to provide a breath sample for independent testing which was timely requested pursuant to 47 O.S.1991 § 752(F), rendered its breathalyzer test result inadmissible insofar as its administrative revocation of the appellee's driver's license is concerned.

¶ 7 In the instant case, it is clear the request for independent analysis made on Nearing's behalf was timely. It is also clear the Sheriff's Office received it, but failed to take the proper action. Nearing's attorney presented evidence the request had been made. However, the hearing officer attempted to inquire as to the status of the request and was incorrectly advised it had not been received. The hearing officer should have continued the hearing further until the correct facts could be determined. Instead, the revocation was sustained.

¶ 8 We agree with the trial court that the order revoking Nearing's license must be set aside. However, we make this conclusion for a different reason. The trial court had all of the facts before it, including Nearing's timely request, the mishandled receipt of the request by the Sheriff's Office and the forwarding of the sample to the laboratory. Thus, the trial court was aware of the existence of the retained sample, distinguishing this case from *Bryant*. At that point, the trial court should have corrected the error made at the DPS administrative hearing and remanded the case for consideration of all of the evidence. Instead, the trial court simply set aside the revocation. This was error. We conclude Appellant's brief is reasonably supportive of the allegations contained therein.

¶ 9 The judgment of the trial court is reversed. This case is remanded to the trial court with instructions to vacate the DPS order and to remand this matter to DPS for a new hearing, at which time all of the evidence, including the report from the independent analysis, shall be heard.

¶ 10  REVERSED AND REMANDED WITH INSTRUCTIONS.

JOPLIN, P.J., and JONES, V.C.J., concur.